SAMUEL B. UPHAM et al., Assignees, etc., Respondents, *v.*
THE NEW YORK LOAN AND TRUST COMPANY, Appellant.

This action was brought by the assignees in bankruptcy, of the members of
the firm of P. & Co., to recover the value of three notes and certain
insurance scrip, alleged to have been transferred to defendant in violation
of the bankrupt law. The following facts appeared on the trial: Defend-
ant was the New York correspondent of said firm, who were private
bankers, doing business at Watertown; said firm became indebted to
defendant upon over-drafts and indorsed paper, which indebtedness
gradually increased up to November, 1874. Defendant, thereafter, gave
no fresh credits, and made repeated efforts, without success, to reduce
this indebtedness. In December, defendant refused to pay checks of
P. & Co.; drafts drawn by said firm, and a firm note held by defendant
were protested. In June, 1874, P. & Co. deposited with defendant cer-
tain notes as collateral for a loan, a part of which were sent by defendant,
in December, to P. & Co. for collection, upon their promise to remit when
collected. On January 8, 1875, defendant was advised by P. & Co. that
they had delivered certain of said notes to another party, crediting them-
selves, on account thereof, with two drafts drawn by defendant upon
them. This claim, to so credit the drafts, was wholly unwarranted;
defendant wrote the next day repudiating it, and demanding a return of
the notes or immediate remittance; and, on January eleventh, sent a special
messenger, to whom P. delivered the next day the three notes in question,
which belonged to his firm, and the insurance scrip, which belonged to
himself, and, also, the residue of the notes sent for collection; the new
securities were received in place of the notes so disposed of by P. & Co.,
and were of considerable less value. P. & Co. were at the time insol-
vent; they suspended business January sixteenth. *Held,* that the evi-

dence justified a finding that defendant knew, or had reasonable cause to believe, at the time it received the securities in question, that P. & Co. were insolvent; also, that the transaction could not be considered as an exchange of securities, but a settlement of a claim for the conversion of the diverted notes; and that, defendant having taken the securities with knowledge of the insolvency, it was an unlawful preference within the provisions of the bankrupt act.

Cook v. Tullis (18 Wall., 332); Clark v. Iselin (21 id., 360), distinguished.

(Argued December 9, 1878; decided January 21, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon a verdict.

This action was brought by plaintiffs, as assignees in bankruptcy of George F. Paddock & Merrit Andrus, who composed the firm of George F. Paddock & Co., to recover the value of the three promissory notes, and certain insurance scrip, alleged to have been transferred by said bankrupts to defendant, in violation of the bankrupt act.

The facts appear sufficiently in the opinion.

*William Allen Butler*, for appellant. Paddock & Co. being the mere agents of defendant to collect the notes, became trustees for defendant, and could not lawfully divert them, or impair defendant's title to them. (*Clark* v. *Iselin*, 21 How. [U. S.], 360, 368; *White* v. *Platt*, 5 Den., 269.) Defendant's right by virtue of its title to the notes extended to the proceeds and attached to any securities in which they might be invested. (*Newton* v. *Porter*, 69 N. Y., 133; *Taylor* v. *Plumer*, 3 M. & S., 562.) Defendant by exchanging the old notes for the new ones and the stock did not impair its right to the continuing security to which it was entitled, and the exchange was not a violation of the bankrupt act. (*Cook* v. *Tullis*, 18 Wal., 332; 21 id., 360; *Stevens* v. *Blanchard*, 3 Cush., 169; *Sawyer* v. *Turpin*, 91 U. S., 114.) Plaintiffs, as the assignees in bankruptcy of Paddock & Co., took only the rights of the bankrupts subject to all equities existing against them. (*Winslow* v. *McLellan*, 2

Story, 495; *In re J. Dow*, 6 N. B. R., 11; *In re Griffith*, 3 id., 179.)

J. *Mullin*, jr., for respondents. The State court had jurisdiction of this action. (*Cook* v. *Whipple*, 55 N. Y., 150; *Goodrich* v. *Wilson*, 119 Mass., 429; *Kidder* v. *Horrobin*, MSS. op. Ct. Apps.; *Wente* v. *Young*, 12 Hun, 220; *Olcott* v. *McLean*, 10 id., 277; *Frost* v. *Hotchkiss*, 13 Nat. Bk. Reg., 443; *Wiswell* v. *Campbell*, 3 Otto, 347.) There was not such an exchange of securities between defendant and Paddock & Co. as is contemplated by the bankrupt act. (*Clark* v. *Iselin*, 21 Wal., 360; *Buchanan* v. *Smith*, 16 id., 332; *Cook* v. *Tullis*, 18 id., 332; *Jeffery* v. *Boatman's Svgs. Bk.*, id., 375; *Sawyer* v. *Turpin*, 91 U. S., 121.)

Andrews, J. The defendant relies upon two grounds for the reversal of the judgment; *first*, that there is no evidence that the defendant, when it received the securities in question, on the 12th of January, 1875, had reasonable cause to believe that Paddock & Co. were insolvent; and *second*, that assuming the contrary, the transaction sought to be impeached in this action was an exchange of securities, and did not constitute an unlawful preference, within the thirty-fifth section of the bankrupt act. We are of opinion that the defendant cannot prevail, upon either of the grounds stated.

1. The actual insolvency of Paddock & Co., on the 12th of January, 1875, is clearly established. Their banking house was then open, and they were conducting their business as usual; but the business was suspended on Saturday, the 16th of January, and on the 18th their bankruptcy was publicly known. On the 12th of January, Paddock, in settlement of the claim of the defendant, transferred to it three notes, amounting to about $1,500, which had been discounted by the bank, and fifty shares of stock of the insurance company, which was his individual property. The claim of the defendant was a claim against Paddock &

Co. The three notes, transferred to the defendant on this occasion, were long past due, and were, as is inferable from the evidence, the most available of any of the assets of the bank, and the only securities at hand which the bank could use in settling the claim of the defendant. The fact, however, that Paddock & Co. were insolvent on the 12th of January, though essential to be proved, did not alone establish the plaintiff's case. It was necessary, before the transaction with the defendant could be disturbed, that evidence should be given, from which the jury would be authorized to find that the defendant had reasonable cause to believe that Paddock & Co. were insolvent.

The dealings between Paddock & Co. and the defendant commenced in the spring of 1874, by the discount by the defendant for Paddock & Co. of paper indorsed by Paddock & Co. The defendant from that time became the New York correspondents of Paddock & Co. Paddock & Co., under the arrangement with the defendant, drew drafts upon the latter, from time to time, and the defendant discounted paper for Paddock & Co. indorsed by them. The indebtedness of Paddock & Co. to the defendant, upon overdrafts and indorsed paper, continued to increase during the summer and fall of 1874 ; and their total indebtedness to the defendant, upon overdrafts and as indorsers, on the 12th of January, 1875, was between $60,000 and $70,000, the direct indebtedness upon overdrafts being about $25,000. As early as November, the defendant called upon Paddock & Co. to make good their overdrafts, and urged them to reduce the indebtedness. *Bowen*, the vice-president of the defendant, says that several letters were written to Paddock & Co. calling their attention to the overdrafts, and requesting Paddock & Co. to make them good ; but it does not appear that the defendant succeeded in procuring any reduction of the debt of Paddock & Co. ; on the contrary, the clear inference is that the debt was not reduced. The defendant, in December, 1874, or about that time, refused to pay checks of Paddock & Co., and one or more drafts drawn by

Paddock & Co. were protested, and a note of Paddock & Co. for $17,000, for a loan made to them in October, on a pledge of iron, went to protest. $7,000 was paid on this note soon after, and on the 31st of December the balance was paid from the proceeds of a call loan of $20,000, made by the defendant to Paddock & Co., on that day, to take up the balance of the $17,000 note and other paper held by the defendant, maturing on that day. I think the inference from the evidence is that no fresh credit was extended by the defendant to Paddock & Co. after November; and that frequent but unavailing efforts were made by the defendant, from time to time, for several months prior to the bankruptcy of Paddock & Co., to secure the payment or reduction of the debt.

Coming more immediately to the transaction of the 12th of January, we are to inquire whether, in view of the circumstances above stated, and the nature of the transaction itself, the jury were authorized to find that the defendant had reasonable cause to believe that Paddock & Co. were then insolvent. In June, 1874, Paddock & Co. had deposited certain notes styled "requisition notes" with the defendant as collateral security. In the latter part of December, a part of these notes were sent by the defendant to Paddock & Co., at their request, for collection and remittance, and upon the promise of Paddock & Co. to remit as the notes were collected. Not receiving any remittance, *Bowen*, soon after the 1st of January, telegraphed Paddock & Co. for "an account and remittance;" and in a few days, the defendant received from Paddock & Co. a letter of January 8th, in which they stated that they had delivered to the Black River Insurance Company certain of the notes, a list of which was given, amounting at their face to $13,250, and crediting themselves with two drafts, amounting in the aggregate to $13,000, drawn, as we infer, upon Paddock & Co., and paid, one December 28th, and the other January 3d. The defendant, on receipt of this letter, and on the 9th of January, wrote to

Paddock & Co. a letter repudiating their claim to apply the drafts as a credit on account of the notes sent for collection, and saying : " These notes were held by us as collateral, and were sent to you (at your request) for collection ; and we shall expect you either to return them or remit for them *at once.* You have no right to dispose of them otherwise."

This letter was mailed at New York, on the evening of January 9th, directed to Paddock & Co. at Watertown ; and on the 11th of January, the defendant sent a special messenger to Watertown, bearing a letter to Paddock & Co., as follows: "New York, *January* 11, 1876. G. F. Paddock & Co. Dear Sirs.— Not hearing from you, and Mr. Paddock not being here on Saturday, as promised, we send Mr. Schreiner to your city, for the purpose of receiving the money due on notes sent you for collection. We must insist upon this, or the return to him of the paper. Yours respectfully. H. J. Hubbard, *Secretary.*"

Schreiner, on reaching Watertown, seeks an interview with Paddock, presents the letter, and demands the notes, or the equivalent in money ; and after considerable negotiation, Paddock procures from the bank the three notes in question, and takes from his pocket the insurance scrip, and delivers them, with such of the notes sent to him by the defendant as were still under his control, to Schreiner, who receipts them on the back of the letter presented by him to Paddock & Co. as " securities in return of the within mentioned." The new securities received by Schreiner in place of the notes delivered by Paddock & Co. to the insurance company were, as may be inferred, of considerable less value than the securities they were given to replace. The claim of Paddock & Co., in their letter of January 8th, to credit the two drafts on the collection account, was, as it would seem, wholly unwarranted.

The transaction of the 12th of January was out of the ordinary course ; and it is difficult to account for it on the assumption that the officers of the defendant believed, at the time, that Paddock & Co. were solvent. Paddock & Co. had parted

with the notes sent them by the defendant, without authority and in violation of their duty. The company were apprised of this by the letter of January 8th. It does not await a reply to the letter of January 9th, but sends a special messenger with a demand for the notes or the money ; and on reaching Watertown, the agent takes, in part, past due paper, and, in part, insurance scrip, the private property of one of the banking company, of less value than the diverted notes, in satisfaction of the wrong committed by Paddock & Co.

We cannot say, upon the evidence, that there is no ground for an inference that the defendant's agents and officers had cause to believe that Paddock & Co. were insolvent, at this time. The officers of the defendant deny that they so believed. It is true also that mere suspicion of insolvency, on their part, would not invalidate the transaction. In order to invalidate a security taken by a creditor from an insolvent debtor, something more than mere suspicion, on his part, of the insolvency must be shown. This has recently been adjudged by the Supreme Court of the United States, in the case of *Grant, Assignee, etc.* v. *Miller* (reported in 17 N. B. Reg., 498). Our province in this case, in dealing with the facts, is to determine simply whether the conclusion of the jury, that the officers of the defendant believed, or had cause to believe, when the securities in question were taken, that Paddock & Co. were insolvent, could legitimately be reached upon the evidence. The condition of mind, under which they acted, whether it was one of conviction, or merely of doubt, was a matter, upon the evidence, peculiarly for the jury ; and we think that question was properly submitted to them.

2. The transaction was not an exchange of securities. The defendant had a claim against Paddock & Co. for the conversion of the notes. The notes had not been collected, but had been delivered by Paddock & Co. to the insurance company, under a claim by the insurance company that they belonged to the company. This acquiescence in the claim concluded Paddock & Co. in respect to the right of the insur-

ance company. Paddock & Co. had not received any proceeds from the notes, and the securities obtained by the defendant had no relation to or connection with them. The misappropriation of the notes by Paddock & Co. was a gross breach of trust. They owed a duty, to protect the defendant from loss resulting from their act. But it was a duty which they could not discharge at the expense of their other creditors; and having taken the securities with knowledge, as the jury have found, of the insolvency of Paddock & Co., it was an unlawful preference within the provisions of the bankrupt act. The cases of *Cook* v. *Tullis* (18 Wall., 332), and *Clark* v. *Iselin* (21 id., 360), apply the principle that a *bona fide* exchange of securities made by an insolvent with his creditor is not a violation of the act. This case is not, we think, within the principle upon which those cases were decided.

These views lead to an affirmance of the judgment.

All concur, except HAND, J., dissenting; CHURCH, Ch. J., not voting; MILLER, J., absent at argument.

Judgment affirmed.