# JANUARY TERM, 1889.[*]

SOLON W. GRIFFIN v. JOHN WALTER ET AL.

*Mortgages—Partial release—Foreclosure.*[1]

This case involves the question of the effect of the release of a portion of mortgaged premises, which had been sold by the mortgagor subject to the payment of a portion of the mortgage debt, and it is held that such release was assented to by the mortgagor, thus taking the case out of the operation of the general rule otherwise obtaining in such cases, concerning which there is no controversy.

Appeal from Montcalm. (Smith, J.) Argued January 17, 1889. Decided February 8, 1889.

Bill to foreclose two mortgages. Complainant appeals from a decree providing for a sale of only part of the mortgaged premises. Reversed and new decree for foreclosure entered. The facts are stated in the opinion.

*Barlow & Loveridge,* for complainant, contended:

1. A mortgage is not merged in a deed between the same parties where it is against their intention, and for the mortgagee's interest that it should be kept alive; citing *Tower v. Divine,* 37 Mich. 445; *Bank v. Webb,* 56 Id. 383.

*Harvey Joslin,* for defendant Walter, contended:

1. A mortgagee's equitable title is merged in the legal title, if he acquires it, unless he intends otherwise, or unless his acceptance of the legal title is brought about by fraud or deceit, and

---

[*] Continued from Vol. 73.
[1] For full digest of points decided, see *Table of Cases Reported.*

the intent is a question of fact; citing *Bank v. Webb*, 56 Mich. 377; and it is a general rule that when the legal and equitable titles become united, so that the owner has the whole title, the mortgage is merged by the unity of possession: Id. 383.

2. The mortgagee, by releasing one of two parcels of land which are charged with the burden of the incumbrance, may, to the extent of the value of the lands so released, diminish his security; citing 1 Jones, Mort. §§ 722, 723.

3. A mortgagee who has notice that, since the mortgage was given, a portion of the land has been sold, cannot release any part of it to the prejudice of the purchaser; citing *Hall v. Edwards*, 43 Mich. 473, 475; and the same rule applies to releasing so as to affect a mortgagor who has sold and conveyed to a mortgagee, subject to the mortgage; citing *Dewey v. Ingersoll*, 42 Mich. 17, 18.

4. A purchaser having assumed the payment of an existing mortgage, and thereby become the principal debtor, and the mortgagor surety of the debt merely, an extension of the time of payment of the mortgage between the holder of it and the purchaser, without the concurrence of the mortgagor, discharges him from all liability upon it; citing Jones, Mort. § 742; *Calvo v. Davies*, 8 Hun, 222; *Thorp v. Coal Co.*, 48 N. Y. 253; *Dock Co. v Leavitt*, 54 Id. 35; *Burr v. Beers*, 24 Id. 178; *Comstock v. Drohan*, 71 Id. 9; *Smith v. Shelden*, 35 Mich. 48; *Crawford v. Edwards*, 33 Id. 354; *Wilcox v. Campbell*, 106 N. Y. 328.

5. Any material alteration in the mortgage contract will discharge the mortgagor; citing Jones, Mort. §§ 740, 741, 742; and the court will not inquire whether the alteration be beneficial or injurious to the surety, if it be a material one: Id.; *Stevens v. Oaks*, 58 Mich. 343, 344; *Metz v. Todd*, 36 Id. 473, 474; *Neimcewicz v. Gahn*, 3 Paige, 614; *Gahn v. Neimcewicz*, 11 Wend. 312; *Christner v. Brown*, 16 Ia. 130; *Bank v. Burns*, 46 N. Y. 170; *Chester v. Bank*, 16 Id. 336; *Billington v. Wagoner*, 33 Id. 31; *Place v. McIlvin*, 38 Id. 96; *Bank v. Coumbe*, 47 Mich. 358, 359, 362.

SHERWOOD, C. J.    On April 7, 1876, defendant John Walter executed to Enos Michael a mortgage for $4,000 on his farm of 73 acres in Kent county, and also upon three 80-acre lots in Montcalm county, upon which was a quantity of pine timber.    The mortgage was given to raise the purchase money to pay for the three lots, mainly.    The money loaned in fact belonged to Oramel

Griffin, Michael acting as his agent in taking the loan, and who duly assigned the mortgage to Griffin on April 15, after taking it. On January 17, 1880, Oramel Griffin's administrator duly assigned the mortgage to Solon Griffin, who now seeks to foreclose the mortgage in the Montcalm circuit court, in chancery.

On April 11, 1876, Walter deeded to Michael an undivided half of the Montcalm county lands for $900. This deed contained the following clause:

" The real estate hereby conveyed is subject to a mortgage of nine hundred dollars, made and executed by the first parties hereto to said second party, dated April 7, 1876, said mortgage being $4,000, and covers certain other lands also, and this deed is subject to nine hundred dollars of said mortgage."

On December 22, 1877, Walter deeded the other half of the Montcalm county lands to Michael for $900, with a parol reserve of one-half of the timber standing thereon. In this deed excepted from the warranty therein contained was—

"Any mortgage or tax lien now against said land,— which second party agrees to pay."

Walter had the half of the timber reserved. The value of the land without the pine timber was about $750.

In 1880 John Walter and Enos Michael, under the firm name of Walter & Michael, commenced lumbering operations on the Montcalm county lands, each owning an undivided half of the timber. This they continued until the fall of 1881, when complainant commenced to foreclose his mortgage, filed his bill, and obtained an injunction, which stopped the lumbering operations of Walter & Michael upon the lands in Montcalm county. Walter & Michael, in this emergency, tried to raise the money and pay complainant's mortgage, but, failing in

this, Michael then went to Griffin, the complainant, for the purpose of procuring an extension of time for payment of the mortgage, and a release of the Montcalm county lands, in order that Walter & Michael might continue their lumbering operations without further interruption. In the mean time Griffin had looked over these lands, and found the timber mostly taken off, and he refused to extend the mortgage or release the lands unless he should have additional security, and an insurance on the buildings on the Kent county farm.

The treaty at this time resulted in the making of a contract, the substance of which is as follows: It is dated January 6, 1882, and provides that the time for the payment of the $4,000 mortgage should be extended five years; that insurance should be obtained from the buildings on the Kent county farm, that Michael should execute a mortgage upon about six acres of land he then owned in Branch county, on which was a grist-mill and saw-mill, known as the "Silver Lake property," for $1,000, as collateral to the $4,000 mortgage, payable within five years, and pay in cash $161.33, and give his note for $400, with interest at 8 per cent., payable in 90 days; and that complainant should reduce the interest on the large mortgage from 10 to 7 per cent., payable semi-annually, should discontinue his foreclosure suit, and release the Montcalm county lands when sold, and would not again enjoin Michael from removing the timber from the same. This agreement was not signed the day it was drawn up, but was sent to Michael, who signed it and returned it to Griffin with a letter in which he says he has instructed Walter that the policy should be made out for $1,000. Acting on this agreement, Walter soon thereafter procured the insurance to be made on the Kent county farm buildings, and transferred the policy to complainant, and sold his interest in the pine timber on the

Montcalm county lands to David Michael. This was done by a written instrument dated February 25, 1882, and in which Walter makes no reference to the $4,000 mortgage, as in the other conveyances, and by a subsequent supplemental agreement Enos Michael is made a trustee to carry out the conditions of the contract made with Griffin on the part of David. On March 4, 1882, Griffin executed a release of the Montcalm county lands on sections 3 and 7.

The bill is now filed by complainant to foreclose both mortgages.

The defendants Mawhood claim as purchasers of part of the Montcalm county lands from Enos Michael and wife, Barbara, and aver that complainant has no interest therein by virtue of his mortgage, and ask that the bill be dismissed as to them.

The defendants Walter, in their answer, claim and insist that by reason of the contract between the complainant and Enos Michael, and the release of the lands by complainant, the Kent county farm should be held released from the operation of the mortgage now attempted to be foreclosed, and which they claim was done without their consent or knowledge.

The court below seems to have taken this view of the case, and held that—

" Complainant, by his dealings with Michael, has disregarded the rights of Walter, with knowledge of the relationship between Michael and Walter," and that—

" 1. He has extended the time for the payment of the mortgage, which would release Walter, the extension being made without his consent.

" 2. He has released from the operation of the mortgage the two eighties and the timber on the three, the proceeds of which should have been treated as a primary fund from which to make the amount of complainant's lien, and the value of the same exceeds the amount of his mortgage."

And the court ordered the Silver Lake property to be sold first, the lot in Montcalm county not released next, and a personal decree against Michael for the balance found due and not realized from such sales, with costs of suit in favor of Walter to be taxed, and that complainant recover his costs against Michael.

It will be noticed that this decree was made upon the finding of the circuit judge that the contract of January 6, 1882, was made without the knowledge or consent of Walter, and if this finding is correct I think the decree should not be disturbed. An examination of the record, however, leads me to a different conclusion. I shall not attempt a recapitulation of the testimony, but the circumstances appear to me to not only warrant a different conclusion, but to make it imperative. There was no reason or special circumstance shown why the complainant should have been induced to favor any of these defendants, or one of them, more than another. The business relations of Walter and Michael, at the time this contract was made, required the same kind of treatment. They constituted a firm which was conducting lumbering operations. These operations and that business had been brought to a stand-still, and they could neither raise money nor furnish securities. Both undertook to raise money, and failed. It would be very natural that they should consult together in such an emergency, and it would be a very strange thing if they did not. Indeed, the evidence shows that Walter was then offering to remortgage the Kent county farm to raise money to pay this mortgage now being foreclosed. If he would consent to do this it seems incredible he would not consent to the contract which was made.

I think the preponderance of the testimony, when taken in consideration with the above facts, and other circumstances which might be mentioned, is to the effect that

Walter did have knowledge of the substance of the contract made on January 6 with complainant, and that it received his assent, whether the written contract was seen by him or not. It would seem impossible that Walter should not have known of the reason of the transfer of the insurance to complainant. The record certainly discloses no equities existing between the complainant and Walter requiring us to strain any rule of law or practice to preserve the rights of the latter now claimed by him, while there are many reasons why it would be most unjust to deprive the complainant of the benefit of his securities by reason of the leniency he has extended to the defendants.

The decree at the circuit must be reversed, and a decree of foreclosure allowed to be entered including the Kent county property, and complainant will recover the costs of both courts against Walter and Michael.

The other Justices concurred.