Rodgers v. Travelers Insurance Co.

---

# MARY PLUMMER RODGERS, Appellant, v. TRAVELERS INSURANCE COMPANY.

### Division One, December 22, 1925.

1. **APPELLATE JURISDICTION: Action on Insurance Policy: Amount in Dispute.** Where plaintiff in her petition asked for $7500 as the amount promised by an insurance policy to be paid to her upon insured's death, $3000 for attorney's fees and ten per cent damages for defendant's vexatious delay and unreasonable refusal to pay said loss, the Supreme Court has jurisdiction upon an appeal by plaintiff from a judgment for defendant.

2. **ACCIDENT INSURANCE: Appeal: Errors Considered.** Where, in an action on an accident insurance policy, there was at the trial evidence *pro* and *con* on the questions of accidental injury and insanity the verdict of the jury for defendant is conclusive upon those questions, upon plaintiff's appeal, unless there was error in the giving or refusing of instructions or in the admission or rejection of evidence.

3. ———: **Suicide: Insanity: Right or Wrong: Irrational Impulse.** The test of legal responsibility for an act of self-destruction by an insured is whether he was at the time able to distinguish between right and wrong in doing the act, or whether he is controlled by an

irrational impulse, and is not to be determined by his conscious knowledge that his act may produce death.

4. ———: ———: ———: Comprehension of Consequences. The test of insanity under an accident insurance policy in case of the suicide of the insured, is not merely his ability or lack of ability to understand the physical consequences of his suicidal act.

5. ———: Instruction: Suicide: Omission of Insane Impulse. In an action on an accident insurance policy where the issues at the trial were (a) whether the shot which caused the insured's death was accidental or intentional, and (b) if the shot was self-inflicted whether he was sane or insane at the time, an instruction for defendant telling the jury that if they find that the death of the insured was due to suicide, then, unless plaintiff has proven by a greater weight of the evidence that "at that time the insured was so far mentally unbalanced as not to be able to know that it was a pistol which he was handling, or that he was so far mentally unbalanced as not to be able to comprehend that, if he discharged the weapon, it would probably cause him bodily harm, then you are instructed that plaintiff has failed to sustain the burden of proving insured's insanity, and it will be your duty to return a verdict for defendant," is erroneous, in that it omits entirely the idea that the insured might not have been sufficiently strong in mind to know whether his act was right or wrong, and the further idea that his will power might have been so reduced that he could not resist an insane impulse to commit the act. [Overruling Gates v. Travelers' Ins. Co., 218 S. W. 927.]

6. ———: Insanity: Correct Instruction: Knowledge of Physical Consequences: Irrational Impulse. In such case, an instruction for plaintiff telling the jury that "if they believe from the evidence that the insured inflicted upon himself the gunshot wound which caused his death, and further believe, from all the facts and circumstances in evidence before you, that, at that time, his reasoning faculties were so far impaired by physical and mental disease that he was not able at the time to understand the moral character of said act, and was not then able to distinguish whether his said act was right or wrong, and that his will power had then been so far impaired by disease that he was not mentally capable of controlling his conduct rationally, and that he was impelled to said act by an irresistible and irrational impulse, then his said act was insane within the meaning of said policy as modified by the law of Missouri, even although you may further believe from the evidence that, at the time of said act, the insured may have had sufficient understanding to know that the physical consequences

of said act would be his death," is correct, and there being evidence making it appropriate to the issues, its refusal was reversible error.

Corpus Juris-Cyc. References: Accident Insurance, 1 C. J., Section 109, p. 444, n. 29; Section 342, p. 513, n. 60. Appeal and Error, 4 C. J., Section 2836, p. 859, n. 5. Courts, 15 C. J., Section 514, p. 1088, n. 22. Trial, 38 Cyc., p. 1548, n. 26.

Appeal from St. Louis City Circuit Court.—*Hon. H. A. Hamilton,* Judge.

REVERSED AND REMANDED.

*Banister, Leonard, Sibley & McRoberts* and *Shepard Barclay* for appellant.

(1)   In a suit upon a policy of insurance against death by accident, it was error to instruct the jury that the test of legal responsibility, for the act of self-destruction, is whether deceased was "entirely unaware of the physical consequences of his act," without regard to his ability to distinguish whether said act was right or wrong. R. S. 1919, sec. 6150; Aufrichtig v. Ins. Co., 298 Mo. 1; Ritter v. Ins. Co., 169 U. S. 145; Andrus v. Assn., 283 Mo. 442. (2)   It was error to instruct the jury that unless deceased was "unable to know or understand that he was firing a revolver," likely to do "him bodily harm or produce his death," he should be held legally responsible for said act of self-destruction. Grand Lodge v. Wieting, 168 Ill. 408; Blackstone v. Ins. Co., 74 Mich. 592; Knapp v. Order, 36 Wash. 601; Bigelow v. Ins. Co., 93 U. S. 284; Berkley on Mental Diseases, pp. 132, 337; Church-Peterson on Mental Diseases, pp. 672, 772; Life Assn. v. Waller, 57 Ga. 537; Ins. Co. v. Peters, 42 Md. 414. (3)   The criterion of legal responsibility for an act of self-destruction is whether the victim is then able to distinguish between right and wrong in so doing, and is not determined by his consciousness that his physical act may produce death, which consciousness many insane suicides possess. Aufrichtig v. Ins. Co., 298 Mo. 1;

Ins. Co. v. Terry, 15 Wall. 580; Newton v. Ins. Co., 76 N. Y. 426; Meacham v. Ins. Co., 120 N. Y. 237; Phadenhauer v. Ins. Co., 7 Heisk. 567; Baldwin v. State, 12 Mo. 231. (4) It was error to repeat many times (Instructions 5, 6, 7, 8 and 9) the rule as to the burden of proof resting on plaintiff. This gave undue emphasis to that charge, and especially in the form in which it was expressed in those instructions. Chappel v. Allen, 38 Mo. 222; Anderson v. Kincheloe, 30 Mo. 520; 2 Thompson on Trials, sec. 2331.

*Jones, Hocker, Sullivan & Angert* for respondent.

(1) The test of insanity is the presence or absence of delusions. Ryan v. People, 60 Colo. 425; Lord Erskine quoted in Com. v. Haskell, 2 Brewst. (Pa.) 497; Bensberg v. University, 251 Mo. 641; Seamen's Friend Society v. Hopper, 33 N. Y. 624; Schissler v. State, 122 Wis. 365. (2) Delusion defined: Conner v. Skaggs, 213 Mo. 348; Fulton v. Freeland, 219 Mo. 517; Benoist v. Murrin, 58 Mo. 307. (3) The test of insanity, in case of the suicide of the insured under an accident policy, is his ability or lack of it to comprehend the physical consequencies of his acts. Borredaile v. Hunter, 5 Man. & G. 280; Clift v. Schwabe, 3 Man. Gr. & Scott, 437; Van Zandt v. Ins. Co., 55 N. Y. 169; Masonic Assn. v. Pollard, 89 S. W. (Ky.) 219; Manhattan Ins. Co. v. Beard, 112 Ky. 461; Allen v. Ins. Co., 4 Allen (Mass.) 96; Adkins v. Ins. Co., 70 Mo. 27; Peterson v. Ins. Co., 152 Wis. 562; Andrus v. Accident Assn., 223 S. W. 74; Gates v. Travelers Ins. Co., 218 S. W. 927; Brunswick v. Ins. Co., 278 Mo. 165.

GRAVES, J.—Action on an accident insurance policy. An attempt was made to remove the cause to the Federal court, but this was denied by both the State and the Federal court. The case was tried upon certain stipulated facts and other evidence. The answer in the

State court, and the only one involved here, was a general denial.

The petition asked for the sum of $7500 under the policy, this being one-half of the value of the policy at the date of the death of Frank W. Rodgers, who was the husband of the plaintiff. The other half was to go to another beneficiary. The petition not only asked for the $7500, but for attorney's fees in the sum of $3000, and ten per cent damages for "defendant's vexatious delay and unreasonable refusal to pay said loss." Hence our jurisdiction in the case upon the appeal of the plaintiff.

Upon the trial the defendant had a verdict signed by ten jurors, and upon such verdict the judgment now appealed from was entered.

The plaintiff introduced in evidence the policy, with the riders attached, sued upon, a letter showing a refusal to pay the policy, proof of the reasonable value of her attorney's fees, and the stipulation as to certain facts, and rested her case. The stipulation, as to certain facts, reads:

"It is hereby stipulated and agreed between plaintiff and defendant, by their respective counsel, that each of the following facts may be taken as true in the above case, and that this stipulation may be admitted in evidence and read to the jury in proof thereof in any trial of this case:

"(1)   That defendant is and was at all times in question incorporated under the laws of the State of Connecticut, and is and was at all such times duly licensed to do and doing business in the State of Missouri as a foreign insurance company.

"(2)   That defendant, for a valuable consideration or premium received, issued and delivered, in the city of St. Louis, Missouri, to one Frank W. Rodgers, on or about November 3, 1914, its Special Accumulative Accident Policy No. E. B. 107953, as per copy of policy and riders hereto attached, which may be introduced in evidence and read to the jury in any trial of this case with the same force and effect as the original policy and riders.

"(3)    That said Frank W. Rodgers died on or about October 26, 1921, as the result of a gunshot wound received by him on the day of his said death.

"(4)    That said policy had been renewed from time to time, and all premiums had been paid annually in advance, and the said policy was in full force and effect at the time of the death of said Frank W. Rodgers.

"(5)    That due notice of the death of said Frank W. Rodgers was given by plaintiff and the other beneficiary mentioned in said policy and was received by defendant; that proof of loss blanks were furnished by defendant to plaintiff, and the other said beneficiary on November 22, 1921, and were duly filled in and returned to defendant by plaintiff and the other said beneficiary in January, 1922.

"(6)    That due demands were made on defendant by plaintiff and the other said beneficiary for the payment of said policy, and that on January 28, 1922, the defendant wrote a letter declining to pay the claim made under said policy, the original of which letter is hereto attached."

The battle was thereafter prolonged upon two questions, (1) whether or not the shot which caused death was accidental or intentional, and (2) if the shot was self-inflicted, whether or not the deceased was sane or insane at the time. The assignment of errors here covers, (1) the giving and refusal of instructions, (2) the admission of incompetent evidence and the refusal to admit competent evidence, and (3) the overruling of a motion of the plaintiff for the production of papers. There are thirty-two assignments of error, but the foregoing classifies them as to their character. Only nine of the assignments are briefed and argued. This sufficiently outlines the case. The evidence will be outlined in the discussion of the points made.

I.    There was evidence *pro* and *con* upon the questions of accidental injury and insanity. The finding of the jury upon both questions would be conclusive here, unless there was error in the giving and refusing of in-

structions, or error in the admission or refusal of evidence. It is therefore useless to detail the evidence, in so far as these matters are concerned. Such portions of the evidence as are applicable to the real issues can best be detailed with those issues. It suffices to say generally that the evidence tends to show that the deceased procured a permit to purchase a revolver and did purchase one, and five loaded cartridges, very shortly before his dead body was found in Forest Park, St. Louis; that near his body and within a very short space from his hand was found a pistol which was identified as the one he had shortly before purchased. This identification was complete per force of our law as to the sale of such weapons, and the records which must be kept.

II. The appellant (plaintiff) urges that Instructions 5, 7, 8, 9 (all reiterating practially the same thing) on the test for insanity, are erroneous, and that the court erred in refusing plaintiff's Instruction C on the same subject. Instruction 7 for defendant reads:

"If the jury find that the death of the insured was due to suicide, then they should consider the evidence bearing on his mental condition at the time. And in that connection the jury are instructed that the law recognizes various degrees of unsoundness of mind. A man may be of sound mind for one purpose in the law and of unsound mind for another. Suicide is only rendered an accidental death if it be shown that·the insured was of unsound mind to such a degree and extent that he was entirely unaware of the physical consequences of his act, and the burden of proving that state of facts rests upon the plaintiff, and must be shown by a preponderance or greater weight of testimony.

"If, therefore, the jury find under the evidence in this case that the death of the insured was due to suicide, then, unless the plaintiff has proven by a preponderance or greater weight of testimony that at that time the insured was so far mentally unbalanced as not to be able

to know that it was a pistol which he was handling, or that he was so far mentally unbalanced as not to be able to comprehend that, if he discharged the weapon, it would probably cause him bodily harm, then you are instructed that the plaintiff has failed to sustain the burden of proving insured's insanity, and it will be your duty on that state of facts to return a verdict for the defendant.''

We shall quote only one of the four, because if Instruction 7 is erroneous, the same erroneous matter was mauled into the minds of the jurors, by the repetition of the same stuff in Instructions 5, 8 and 9.

Plaintiff's Instruction C, which was refused, reads:

''The court instructs the jury that if they believe from the evidence that Frank W. Rodgers inflicted upon himself the gunshot wound which caused his death, and further believe, from all the facts and circumstances in evidence before you, that, at that time, his reasoning faculties were so far impaired by physical and mental disease that he was not able at the time to understand the moral character of said act, and was not then able to distinguish whether his said act was right or wrong, and that his will power then has been so far impaired by disease that he was not then mentally capable of controlling his conduct rationally, and that he was impelled to said act by an irresistible and irrational impulse, then his said act was insane within the meaning of said policy as modified by the law of Missouri, even although you may further believe from the evidence that, at the time of said act of Frank W. Rodgers, he may have had sufficient understanding to know that the physical consequences of said act would be his death.''

For reasons stated, supra, defendant's demurrers to the evidence were well ruled by the court. They were refused. As stated, supra, there was substantial evidence (if competent) *pro* and *con* upon both questions at issue in the case. The first legal question is the alleged error in instructions 5, 7, 8, 9, given for defendant, and the corresponding legal question involved in the refusal of

Instruction C, asked by plaintiff. For this reason we take both together.

A thorough research of the authorities convince us that Instructions 5, 7, 8 and 9 for defendant are saturated with error of the most prejudicial character, under the great weight of the more recent well-considered cases.

These instructions proceed upon the theory that if the deceased had mind enough to know that he was handling a revolver, and in addition to know that if he discharged it against his person, physical injury or death would follow, then he was not insane. They leave out entirely the idea that he might not have been sufficiently strong in mind to know whether his act was right or wrong, and the further idea that his will power (an attribute of the mind) might have been so reduced that he could not resist an insane impluse to commit the act.

The foregoing question has had a checkered career in the courts of our country. The whole trouble in this country starts with the old English case of Borradaile v. Hunter, 5 Man. & G. 639. Such case was an action upon an insurance policy. Rev. Wm. Borradaile jumped from a bridge into the Thames River, and was drowned. The executor sued upon the policy. The jury in the lower court found: "That Mr. Borradaile voluntarily threw himself from the bridge with the intention of destroying life; but at the time of committing the act, he was not capable of judging between right and wrong." The court *nisi* entered judgment for defendant on the insurance contract, which contract excluded liability if the assured "shall die by his own hands."

In an extended note to the case in the full reprint of English cases, 134 English Cases (Full Reprint) p. 719, it is said that the Equitable Insurance Company with the identical clause in its policy had paid Rev. Borradaile's executor, the full sum of 3000 pounds, or nearly $15,000 in our money.

It is well to note that of the four judges who heard the case after it left the trial court, Chief Justice TENDAL dissented vigorously, and held that under the latter clause

311 Mo. Sup.—17.

of the jury's verdict, judgment should have gone for the plaintiff. MAULE, J., who in opinion sustained the judgment of the trial court for defendant, yet expressed grave doubt of the correctness of his conclusions. COLTMAN J., likewise expressed grave doubt. So only ERSKINE, J., of the bench of four was positive of the correctness of his ruling. He was the trial judge in the lower court. This case, in this situation, had been the rock upon which some of our cases (especially the earlier ones) have announced the rule that if the deceased suicide had mind enough to appreciate the physical results of his act, the policy was voided, although at the time he did not have mind enough to appreciate the right or wrong of the act, and although he did not have will power (mind power) to resist the insane impulse to take his own life.

The Supreme Court of the United States took a different view of the proposition, from that expressed by our learned English brothers, and resolved the doubt expressed by MAULE and COLTMAN, JJ., in the Borradaile case, supra, in favor of plaintiffs, in such actions, rather than in favor of insurance companies. We refer to the earlier case of Life Insurance Company v. Terry, 82 U. S. (15 Wall.) 580. Mr Justice HUNT, who wrote the opinion, discussed a long line of cases, including the Borradaile case from England. There was but one dissent in Terry's case in our Supreme Court—that of Mr. Justice STRONG. In the first part of his opinion Mr. Justice HUNT states the contention before him thus:

"The request for instructions made by the counsel of the insurance company proceeds upon the theory that if the deceased had sufficient mental capacity to understand the nature and consequences of his act, that is, that he was about to take poison, and that his death would be the result, he was responsible for his conduct, and the defendant is not liable; and the fact that his sense of moral responsibility was impaired by insanity, does not affect the case.

"The charge proceeds upon the theory that a higher degree of mental and moral power must exist; that although the deceased had the capacity to know that he

was about to take poison, and that his death would be the result, yet, if his reasoning powers were so far gone that he could not exercise them on the act he was about to commit, its nature and effect, or if he was impelled by an insane impulse which his impaired capacity did not enable him to resist, he was not responsible for his con-. duct, and the defendant is liable."

The plaintiff had judgment below upon a charge similar to the one expressed in the last paragraph of the quotation, supra. The insurance company contended for an instruction along the very line of defendant's given Instructions 5, 7, 8 and 9 in this case. In the Terry case the lower court refused to so charge the jury. The U. S. Supreme Court, with but the one dissent, noted supra, affirmed the trial court and condemned the requested charge asked by the insurance company, and sustained the charge given by the lower court, which is very similar to the plaintiff's refused Instruction C, in the instant case. In concluding his opinion Mr. Justice HUNT, said:

"We hold the rule on the question before us to be. this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, con-sequences, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

The ruling in this case has been consistently followed by the U. S. Supreme Court. [Insurance Company v. Rodel, 95 U. S. 232; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 1. c. 127 et seq.; Ritter v. Mutual

Life Ins. Co., 169 U. S. 1. c. 149.] And this court in Aufrichtig v. Columbia Ins. Co., 298 Mo. 1. c. 17, approved the line of instructions in the Ritter case, supra, which line of instructions was and has been approved since Terry's case in 82 U. S., supra.

In Broughton's case, supra, 109 U. S. 1. c. 131, it is said:

"These instructions are in exact accordance with the adjudications in the cases of Terry and Rodel; and upon consideration we are unanimously of opinion that the rule so established is sounder in principle, as well as simpler in application, than that which makes the effect of the act of self-destruction, upon the interests of those for whose benefit the policy was made, to depend upon the very subtle and difficult question how far any exercise of the will can be attributed to a man who is so unsound of mind that, while he foresees the physical consequences which will directly result from his act, he cannot understand its moral nature and character, or in any just sense be said to know what it is that he is doing.

"If a man's reason is so clouded or disturbed by insanity as to prevent his understanding the real nature of his act, as regards either its physical consequences or its moral aspect, the case appears to us to come within the forcible words uttered by the late Mr. Justice NELSON, when Chief Justice of New York, in the earliest American case upon the subject: 'Speaking legally also (and the policy should be subjected to this test), self-destruction by a fellow being bereft of reason can with no more propriety be ascribed to his own hand than to the deadly instrument that may have been used for the purpose;' and, whether it was by drowning, or poisoning, or hanging, or in any other manner, 'was no more his act, in the sense of the law, than if he had been impelled by irresistible physical power.' [Breasted v. Farmers' Loan & Trust Co., 4 Hill, 75.] Judgment affirmed."

This case is instructive, because it sets out the various instructions from Terry's case, and others, which were approved, and under them defendant's instructions

in the case before us are patently wrong, and Instruction C for plaintiff (but refused by the trial judge) was right.

Since Terry's case our State courts have practically lined up in support of the rule announced in Terry's case. Some are so forceful, and so well and soundly reasoned, that we reluctantly omit many quotations, for sake of brevity in this opinion. Some of the State cases are: Phadenhaur v. Germania Life Ins. Co., 7 Heisk. (Tenn.) l. c. 576 et seq.; Life Ins. Co. of America v. Waller, 57 Ga. l. c. 536 et seq.; Blackstone v. Ins. Co., 74 Mich. l. c. 609 et seq.; Grand Lodge v. Wieting, 168 Ill. l. c. 420; Meacham v. N. Y. S. M. B. A., 120 N. Y. l. c. 243; Knapp v. Order of Pendo, 36 Wash. l. c. 606; Newton v. Life Ins. Co., 76 N. Y. l. c. 429. In the Wieting case in 168 Ill., supra, at page 419, it is said:

"It is believed there is a substantial concurrence of judicial decision in America on the proposition that if, at the time of the suicidal act, the assured was so affected with insanity as to be unconscious of the act or of the physical effect thereof, or was driven to its commission by an insane impulse which he had not the power to resist, the act of self-destruction is regarded as though it were the result of accident or some irresistible external force, and the proviso of a policy framed as the one at bar, or where other phrases denoting self-destruction are used, will not attach, but the insurer will be held liable."

In the State cases cited, supra, will be found a great number of State cases cited, wherein the doctrine of the Terry case is followed.

The Missouri cases cited by defendant are distinguishable, or not applicable at all, except the case of Gates v. Travelers' Ins. Co., 218 S. W. 927. This case is largely bottomed on the English case of Borradaile v. Hunter, 5 Man. & G. 639. We have discussed that case fully, supra. It is not in line with cases here since Terry's case. The Adkins case cited by our Court of Appeals, 70 Mo. 27, is easily distinguished. The Gates case should

be and is overruled, as being against the great weight of authority in the United States.

The instant case must be reversed for the errors in Instructions 5, 7, 8 and 9 for defendant, and for the refusal of Instruction C asked by plaintiff. There are other errors charged, but a careful retrial will no doubt eliminate those, and we shall not go further now. We are impressed with some other contentions of the plaintiff, however.

Let the judgment be reversed and the cause remanded. All concur.