LITTLE JOSEPHINE MIN. CO. v. FULLERTON et al.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1893.)

No. 286.

1. MINES AND MINING—ADJOINING CLAIMS — FOLLOWING VEIN—HARMLESS ERROR.

Plaintiff owned two mining claims, the veins of which united below the surface, and, at a much greater depth, met the vein of defendants' claim, which had been located long after the location of the older of plaintiff's claims. In ejectment for the ore below the point of meeting, which plaintiff claimed, under Rev. St. § 2336, as having the prior location, the only issue was whether the veins united or crossed each other. *Held,* that it was immaterial whether the location of plaintiff's junior claim was prior or subsequent to defendants' location, and rulings upon evidence on that question, if erroneous, were not prejudicial to plaintiff.

2. SAME—ORE WITHIN SPACE OF INTERSECTION OF VEINS—JUDGMENT ON GENERAL VERDICT—QUESTION NOT RAISED AT TRIAL.

A judgment on a general verdict for defendants in such action will not be reversed because it fails to define plaintiff's rights, under Rev. St. § 2336, to the ore within the space of intersection of the veins, where the question was not called to the attention of the court either before the verdict or when it was received, and where a statute of the state provides that a verdict for part of the premises claimed shall particularly specify such part.

3. APPEAL—REVIEW—MATTERS OF DISCRETION—DECISION ON MOTION FOR NEW TRIAL.

The denial of a motion for a new trial is not subject to review in the federal appellate courts.

In Error to the Circuit Court of the United States for the District of Colorado.

At Law. Action of ejectment by the Little Josephine Mining Company against William Fullerton, Edward F. Clinton, Job V. Kimber, Richard Mackey, Richard W. Moseley, and John B. Ballard, to recover possession of a vein of ore. Verdict and judgment for defendants. Plaintiff brings error. Affirmed.

John G. Taylor, (R. T. McNeal, on the brief,) for plaintiff in error.

Willard Teller, (Harper M. Orahood and Edward B. Morgan, on the brief,) for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. The Little Josephine Mining Company, a corporation, brings this writ of error to reverse a judgment in favor of the defendants in error in an action of ejectment which it brought in 1889 to recover possession of a vein of ore it claimed to own, and which the defendants had taken possession of, about 800 feet below the surface of the earth. The defendants claimed

that they were the owners of this vein at that point, and entitled to its possession, by virtue of their ownership of a vein which there intersected the plaintiff's vein. The case was tried to a jury. The facts were that the plaintiff was the owner of the Slaughterhouse lode mining claim, which was patented in 1871 upon a location made in 1866 on the Slaughterhouse vein, which had a dip north-wardly, and which, after passing out of its northerly side line extended down vertically, struck the Fagan vein about 800 feet below the surface. The Fagan vein was owned by the defendants. Its apex was within the boundaries of the Fagan lode mining claim, which was located on the surface some distance northerly of, and nearly parallel to, the Slaughterhouse claim. The Fagan claim was originally located May 3, 1876, but prior to its location a large portion of the tract included within its boundaries had been located, and was then legally held, as a part of the Wheeler lode mining claim. Prior to December, 1887, the defendants became owners of both these claims. On December 1, 1887, they filed amended location cer-tificates of both the Wheeler and Fagan claims, the effect of which was to change their boundary lines somewhat, and to swing them clear of each other. The original discovery shaft of the Fagan claim was within the boundary lines of the original Wheeler claim, and the defendants sank a new discovery shaft on it December 1, 1887. Up-on these amended certificates of location these two claims were pat-ented before this action was brought. The Little Josephine mining claim, which is owned by the plaintiff, is situated between, and nearly parallel to, the Slaughterhouse and Fagan claims, and was located December 19, 1877. The Little Josephine vein, the apex of which is within the surface lines of this claim, dips northwardly, and at the depth of 467 feet below the surface it unites with the Slaughter-house vein, and the vein thus formed by their union continues down with a dip northwardly, until it strikes the Fagan vein. The dip of the Fagan vein is southwardly, and it passes out of the southerly side line of the Fagan claim extended vertically downward before it meets the Slaughterhouse vein.

The plaintiff claims that at the point of meeting these two veins unite, and form a single vein, while the defendants maintain that they intersect each other like the parts of the letter "X." In their brief the counsel for the plaintiff say: "The main contention was, whether at this point these two veins united and became one, or crossed each other on their dip, and continued on as distinct veins." On another page they say: "Practically speaking, this was all the contention there was at the trial." If a critical examination of the record does not fully justify this statement, it certainly strongly supports it, and in the consideration of the case we give the plain-tiff the benefit of the doubt, and treat this statement of its counsel as true. The court below properly charged the jury that the Slaughterhouse location was older than the Fagan location; that if the two veins united, the plaintiff would be entitled to all the ore in the vein below the point of union; read to them section 2336, Rev. St., viz.: "Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be

entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purposes of the convenient working of the mine. And where two or· more veins unite, the oldest or prior location shall take the vein below the point of union;" —and told them that what was required of them was to say, upon all of the testimony submitted, whether these two veins crossed each other or united at their point of meeting. It is conceded that this portion of the charge is correct, but it is assigned for error that the court below admitted in evidence the original certificate of the Fagan claim, rejected evidence tending to show that the original discovery shaft of that location was within the boundary lines of the prior Wheeler location, and charged the jury that the Josephine location was younger than the Fagan. Whether or not there was error in these rulings it is unnecessary to pause to consider, because it is perfectly evident that if they had all been reversed this could not have benefited the plaintiff. The only effect of opposite rulings would have been to have dated the Fagan location December 1, 1887, when the amended certificate was filed, instead of May 3, 1876, when the original certificate was filed, and thus to have made the Josephine location of December 19, 1877, senior to the Fagan location. But this could not in any way have affected the issue on trial. Both these locations were years junior to the Slaughterhouse location, which passed to patent in 1871. Moreover the Josephine vein united with the Slaughterhouse vein only 467 feet below the surface, and more than 300 feet before the united vein struck the Fagan vein. From the point of union of the Slaughterhouse and Josephine veins to the point of contact of this united vein with the Fagan vein, 800 feet below the surface, the Slaughterhouse, being the prior location, took the entire vein. The title to it related back to the Slaughterhouse location as early as 1871, and the court properly instructed the jury that, if this vein united with the Fagan, the plaintiff must prevail, under the statutes, because the Slaughterhouse location was the older on that ground. Under this state of facts it was entirely immaterial whether the location of the Josephine on its branch of the Slaughterhouse vein was prior or subsequent to the location of the Fagan vein, and error without prejudice is no ground for reversal. Sanger v. Flow, 4 U. S. App. 32, 1 C. C. A. 56, 62, 48 Fed. Rep. 152; Dorsheimer v. Glenn, 4 U. S. App. 500, 2 C. C. A. 309, 51 Fed. Rep. 404; Railroad Co. v. Stoner, 4 U. S. App. 109, 2 C. C. A. 437, 444, 51 Fed. Rep. 649.

It was claimed at the argument that the Josephine claim extended 375 feet farther east than the Slaughterhouse claim, and that as to this portion of the vein in dispute the title must depend upon the priority of the Josephine location over the Fagan location, but this claim finds no support whatever in the record before us, and can receive no consideration. The record discloses that the witnesses for the plaintiff testified that the Josephine vein united with the Slaughterhouse vein, but it is entirely silent as to the extent or exact location of either claim on the surface of the ground.

Neither the certificates of location, nor the patents, nor any other evidence of the extent or limits of any of these locations has been preserved in the bill of exceptions.

The denial of the motion for a new trial, which is also assigned as error, was a matter in the discretion of the court below, and is not subject to review in this court. Railroad Co. v. Howard, 4 U. S. App. 202, 1 C. C. A. 229, 49 Fed. Rep. 206; McClellan v. Pyeatt, 4 U. S. App. 319, 1 C. C. A. 613, 50 Fed. Rep. 686; Village of Alexandria v. Stabler, 4 U. S. App. 324, 1 C. C. A. 616, 50 Fed. Rep. 689.

The last assignment of error is that "the court erred in entering its judgment for the defendants without ascertaining and defining the rights of this plaintiff in and to the ore at the point of intersection and crossing of the Slaughterhouse and Fagan veins, and for a failure by said judgment and decree to completely fix and determine all the rights of the respective parties to the property in controversy."

But this was not a suit in equity. It was an action of ejectment, the trial of which resulted in a general verdict for the defendants. The court entered the customary judgment of dismissal on such a verdict. The argument used to assail this action of the court is that, as the jury must have found that the two veins crossed each other, the court should have entered a decree in favor of the plaintiff for the recovery of the ore in the space of intersection. This position is untenable. No request was made in behalf of the plaintiff for the court to instruct the jury to return a verdict in its favor for the ore in this space, if there was any, nor was the attention of the court called to this question in any way before the verdict, or when it was received. The Code of Colorado expressly provides that in an action of ejectment, "if the verdict be for all the premises claimed, as specified in the complaint, it shall in that respect be for such premises generally. If the verdict be for part of the premises described in such complaint, the verdict shall particularly specify such part, as the same shall have been proved, with the same certainty hereinbefore required in the description of the premises claimed." Code Colo. § 269.

If the counsel for the plaintiff desired a verdict of the jury for the ore in the space of intersection, in case the jury found the veins did not unite, it was their privilege to pray the court for an instruction to that effect, or, when the verdict came in, to move that the jury be instructed to modify their verdict to that effect; and if that request was refused, and a proper exception taken, this court might have considered whether there was error in such a ruling of the court below. This privilege the counsel for the plaintiff waived. They chose to stake the whole case, and win or lose all, on the decision of the single question whether the veins united or crossed. This they had the right to do, and, as the court below was not requested at the trial to consider or determine the question now presented in this court, and did not act or refuse to act upon it, it surely committed no error here for this court to consider.

That the judgment of dismissal was properly entered upon this general verdict for the defendants is axiomatic. A general verdict

for the defendants in ejectment, which results from the trial of a hotly-contested issue of fact, certainly does not authorize the court to enter a judgment in that action in favor of the plaintiffs for the possession of any of the property in controversy. We are of the opinion that there was no material error in this case, and the judgment below is affirmed.