**BETHLEHEM SHIPBUILDING CORPORATION, Limited, v. WEST & DODGE CO.**

(Circuit Court of Appeals, First Circuit. January 26, 1926.)

No. 1851.

1. **Trial** ⬦=⇒139(1)—**Directed verdict for defendant properly refused, if any evidence would sustain verdict for plaintiff.**

A directed verdict is properly refused defendant if any evidence would sustain a verdict for plaintiff.

2. **Evidence** ⬦=⇒48—**Common knowledge that, in war emergency, Navy Compensation Board could not personally approve prices of materials purchased under thousands of government contracts.**

It is a matter of common knowledge that, in war emergency, Navy Compensation Board could not personally approve prices at which materials should be purchased under thousands of contracts made by the United States.

3. **United States** ⬦=⇒74½, **New, vol. 12A Key-No. Series—To sustain defense that award by Compensation Board was obtained by fraudulent representations, it must be shown that representation was relied on.**

In suit to recover for oil-burning equipment, furnished by subcontractor to contractor constructing boats for United States navy on a cost plus profit basis, where defendant contractor contended that subcontractors obtained approval of prices by Compensation Board by fraudulent representation, held jury were properly instructed that, to sustain such defense, it must be shown representation was relied on.

4. **United States** ⬦=⇒74½, **New, vol. 12A Key-No. Series—Whether subcontractor had made fraudulent representation to secure approval of price, and whether it was relied on, questions for jury.**

In action to recover for oil-burning equipment brought by subcontractor against contractor constructing boats for Navy Department on cost plus profit basis, questions whether subcontractor had made a fraudulent representation in securing approval of prices by Navy Compensation Board, and whether such representation was relied on, were properly submitted to jury.

5. **United States** ⬦=⇒74½, **New, vol. 12A Key-No. Series—Instruction that subcontractor's contract would be null and void, in view of statutes, if price was unfair, unreasonable, and exorbitant, and in excess of reasonable profit, properly refused.**

In action to recover for oil-burning equipment, brought by subcontractor against contractor constructing boats for navy on cost plus profit basis, instruction that subcontractor's contract would be null and void, under Naval Appropriation Act March 4, 1917, and Urgent Deficiency Act Oct. 6, 1917, if subcontractor's price was unfair, unreasonable, exorbitant, and in excess of a reasonable profit, held properly refused, inasmuch as those statutes do not apply to subcontracts made by party contracting with the United States.

6. **United States** ⬦=⇒74½, **New, vol. 12A Key-No. Series—Instruction as to Compensation Board's ascertainment of cost, as condition precedent to subcontractor's right to recover against contractor, held properly refused.**

In action to recover for oil-burning equipment, brought by subcontractor against contractor constructing boats for navy under cost plus profit agreement, held that, while under conditions of contract between contractor and United States subcontracts were to be submitted for approval of proper board of Navy Department, an instruction that ascertainment of cost by Navy Compensation Board or Cost

Inspection Board was a condition precedent to plaintiff's right to recover was properly refused, in view of evidence of waiver of this requirement.

**7. United States ⊜⇒74½, New, vol. 12A Key-No. Series—Estimate of cost made by subcontractor's assistant superintendent admissible to show whether representation by president in letter as to cost was fraudulent.**

In action to recover for oil-burning equipment, brought by subcontractor against contractor constructing boats for Navy Department on cost plus profit basis, where defendant alleged that subcontractor had obtained approval of price by Compensation Board by fraudulent representation, *held* that estimate of cost by subcontractor's assistant superintendent was admissible in evidence to show whether a representation as to cost, made by president in letter, was fraudulent.

**8. Trial ⊜⇒133(6)—Counsel's comment as to government's failure to produce alleged audit of cost, if improper, not harmful, in view of instruction to disregard it.**

In an action to recover for oil-burning equipment, furnished by subcontractor to contractor constructing boats for Navy Department, where defendant alleged subcontractor had procured approval of price award by false representation, *held* comment of counsel as to government's failure to introduce audit relative to cost, if improper, was not harmful, in view of instruction to jury to disregard it.

**9. Trial ⊜⇒132—Improper statements by plaintiff's counsel, as to defendant's hoping to get jury to believe plaintiff had got something he was not entitled to, harmless, in view of prompt retraction.**

In action to recover for oil-burning equipment, furnished by plaintiff subcontractor, improper statement by plaintiff's counsel, as to defendant's hoping to get jury to believe that plaintiff had got something it was not entitled to, harmless, in view of prompt retraction.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by the West & Dodge Company against the Bethlehem Shipbuilding Corporation, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass., and Pickens Neagle, of Washington, D. C. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for plaintiff in error.

Michael J. Mulkern, of Boston, Mass. (Ralph H. Willard and Ham, Willard & Taylor, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The Bethlehem Shipbuilding Corporation, Limited, hereinafter called Bethlehem, having entered into a written contract with the United States to construct for it torpedo boat destroyers on a cost plus profit basis, on December 11, 1917, gave to the West & Dodge Company, hereinafter called West & Dodge, purchasing orders for oil burners, oil burner air cones, and oil burner holders for 40 boats, at a price of $3,300 for each boat, in accordance with the latter's proposal, subject to the approval of the Compensation Board created by the Navy Department.

West & Dodge delivered all of the equipment called for, and has received pay for that furnished for 35 boats.

In this action of contract it seeks to recover the amount due for the equipment furnished for the remaining five boats at the rate of $3,223 per boat, which it claims was the amount approved by the Compensation Board, and which Bethlehem had notified it that it would pay.

The case has been here twice before—the first time upon a demurrer to the defendant's answer, and the case was remanded to the District Court in order that the defendant might, if it saw fit, amend its answer so as to include as a defense that the approval of the Compensation Board was obtained by a fraudulent representation.

The answer was so amended, and the case came on for trial before a jury in the District Court, where a verdict was directed for the plaintiff, because, in the opinion of the presiding judge, there was no evidence that the Compensation Board had knowledge of the fraudulent representation alleged to have been made. This court held, however, that there was evidence which would warrant a jury in finding that the approval of the Compensation Board was obtained by a fraudulent representation, and reversed the judgment of the court below. A jury has now returned a verdict for the plaintiff, and the case has been brought here upon a writ of error by the defendant.

When the case was first before this court, it was held that, although the contract between the United States government and the Bethlehem was one on a cost plus profit basis, this provision did not apply to subcontracts made by it, and therefore not to the contract with West & Dodge.

The issue of whether there was a fraudulent representation made by West & Dodge, which induced the Compensation Board to give its approval to the contract price of $3,223 per boat, has now been passed upon

by a jury, and a verdict returned for the plaintiff.

The errors assigned are: The denial of the defendant's motion for a directed verdict; the refusal to give certain instructions; the admission of evidence and statements made by counsel for the plaintiff in addressing the jury in his closing argument. [1] If there was any evidence which would sustain a verdict for the plaintiff, the request for a directed verdict was properly refused.

The evidence discloses that, while, under the terms of the contract between Bethlehem and the government, the price to be paid by it under its contract with West & Dodge for the equipment which the latter was to furnish was to be approved by the Compensation Board, and West & Dodge were requested by Bethlehem to submit a statement of the cost of the equipment which it had contracted to furnish, that it had neglected to do so, because it had been unable to ascertain the cost with any degree of accuracy.

The president of West & Dodge testified that his company was a small one, employing about 25 men, and that, because of this contract, it was necessary to enlarge the number of its employees to about 150, to purchase additional tools and machinery and acquire another plant; that it was also engaged in the performance of other work at the time work was being pushed upon the equipment for these destroyers; that it was difficult to separate the cost which should be allocated to the equipment for the burners; that the work was being pushed day and night, Sundays included, and the furnishing of any detailed statement of costs was impossible. Upon repeated requests from Bethlehem to furnish such a statement, West & Dodge, under date of March 4, 1918, stated in a letter to Bethlehem:

"The cost of these oil burners, so far as we have been able to judge, is about 85 per cent. of the price we quoted you."

In reply to this statement, West & Dodge received from Bethlehem, March 6, 1918, a letter in which Bethlehem stated:

"As you have been informed in previous correspondence, before the prices appearing in these orders will be approved by the Compensation Board it will be necessary for you to furnish a detailed cost statement justifying the prices quoted. If fabrication has not proceeded sufficiently far to permit of such a statement, a detailed estimate of costs should be submitted for the board's consideration"— and stating in substance that, until the gov-

ernment's wishes were complied with, price approval would not be forthcoming, and therefore it would be impossible to pass the invoices rendered for payment until such approval, and that it therefore would be much to the advantage of West & Dodge to expedite the submission of a cost statement in every way possible. After the receipt of this letter, the president of West & Dodge had an interview with H. P. Readmon, assistant to the purchasing agent of Bethlehem, in which he testified that he told Mr. Readmon that it was impossible for him to give the costs, due to the tremendous volume of business of his company and its limited bookkeeping department; that Readmon said that there was another concern that was building the same kind of a burner; that its accounts had been audited and the Compensation Board was satisfied that $3,223 was a good fair price, and had approved it; and that he then told Mr. Readmon that he would be willing to take the contract for the whole business for $3,223 per boat.

Bethlehem secured the approval of a tentative price of $3,223 per boat in connection with material which had already been shipped and invoiced by West & Dodge, and so informed the latter, but still called for a statement showing the cost of equipment of at least one boat. In reply to this, West & Dodge wrote Bethlehem, under date of April 2, 1918, in part, as follows:

"In connection with furnishing the cost statements which has been the subject of previous correspondence between us, we beg to advise that we have still been unable to get these in shape, owing to a change in our bookkeeping department and pressure of business; but we would be willing, as we have already explained to Mr. Readmon, taking into consideration the number of boats we are now working on, to suggest that we make a flat rate of $3,223 per boat on all of the orders above mentioned, provided the necessary approval could be abtained at once, and we could have the assurance that our bills for this amount would be approved and remitted for promptly, so that we would not be delayed in going ahead. Will you accordingly submit this proposition to the necessary authorities and advise us at once."

Upon the orders covered by the contract in suit, Bethlehem obtained, on April 13, 1918, approval of the cost inspector acting under the direction of the Compensation Board, as follows:

"It being understood that the subcontractor is willing to accept a price of $3,223 per

boat for oil burners covered by the above order, this office herewith gives formal approval of the above order at that price, $3,223 per boat."

[2] It is contended that there was no evidence that Mr. Main, cost inspector, was authorized to approve for the Compensation Board the price of $3,223. He testified, however, that he was authorized, and no evidence was introduced to disprove this, nor was he cross-examined upon it. That, as cost inspector he was stationed at the plant at Bethlehem, and it acquiesced in his approval and did not question his authority to act for the Compensation Board, gives added weight to his testimony, as also does the fact that it is a matter of common knowledge that, in the emergency which had arisen, the Compensation Board could not personally approve the prices at which materials should be purchased under the thousands of contracts made by the United States.

After receipt of this communication, Bethlehem, on April 16, 1918, sent the following communication to West & Dodge:

"We are pleased to advise you that we are authorized to make final award of Union Plant's purchase order F–12–11–17, by the Compensation Board, Navy Department, Washington, D. C., and that you may proceed with this order at $3,223 per boat."

There was a like communication upon the same date in regard to the other orders placed with West & Dodge.

[3] The jury were correctly instructed that it was necessary to sustain the defense that the award of $3,223 per boat was obtained by a fraudulent representation, to show that such representation was relied upon. There were also full and explicit instructions in regard to what would constitute a fraudulent representation.

[4] Whether there was any fraudulent representation, and, if so, whether it was relied upon, were, we think, correctly submitted to the jury, and there was no error in the denial of the motion for a directed verdict.

[5] The second and third assignments of error relate to the refusal of the presiding judge to instruct the jury, in substance, that, if the plaintiff knew that the torpedo boat destroyers were being built by Bethlehem for the United States under a cost plus profit contract, and the price of $3,223 alleged to have been approved, was unfair, unreasonable, and exorbitant and a price in excess of a reasonable profit above the actual cost of manufacture, contrary to the Naval Appropriation Act of March 4, 1917 (39 Stat.

1168), the Urgent Deficiency Act of October 6, 1917 (40 Stat. 345), the jury would be warranted in finding that the plaintiff's alleged contract, upon which the action was brought, was illegal, null, and void.

The question raised by these instructions was decided by this court when the case was first before us, and we there held that, in accordance with the opinion of the Attorney General, which was accepted by the Navy Department and acted upon by it, the provision of these statutes applies only to purchases by the United States or to contracts made by it, and not to subcontracts made by the party contracting with the United States, and there was no error in refusing to give these instructions.

[6] It is also assigned as error that the District Court refused to instruct the jury that there was no evidence to warrant them in finding that the Compensation Board or the Cost Inspection Board ever ascertained the actual cost of the burners mentioned in the plaintiff's declaration, and that this was a condition precedent to the approval of any cost by the Cost Inspection Board, and that, the cost not being shown to have been so ascertained, plaintiff is not entitled to recover on the alleged contract declared on.

While it is true that, under the conditions of the contract between Bethlehem and the United States, the subcontracts which it made were to be submitted for approval to the proper board of the Navy Department, yet, as there was evidence from which the jury could find that this requirement had been waived, and the case was submitted to the jury for the determination of whether there had been such waiver or not, this instruction was correctly refused. It was not applicable to the issue which had been raised and which was submitted to the jury.

[7] Over the objection of the defendant, an estimate of the cost of these oil burners made by the assistant superintendent of West & Dodge for the information of its president in making his original proposal was received in evidence. This statement covered in detail material and labor costs in relation to these oil burners which amounted to $2,735.20. This was admitted by the court only upon the question of good faith of Mr. Dodge in making the representation contained in his letter of March 4, 1918.

The witness testified that he made these estimates from a set of blueprints which had been furnished him, and that his calculations and computations were made for the purpose of estimating the cost, that his estimate was

turned over to Mr. Law, who was the superintendent of West & Dodge, and that it was shown by him to Mr. Dodge. It also appeared that this estimate had been checked up with reference to the actual work which had been done, and the result of this comparison communicated to Mr. Dodge before he wrote the letter of March 4, 1918.

As bearing upon the question of whether his representation in that letter was fraudulent or not, we think this estimate, prepared by practical men in the employ of the plaintiff, and compared with actual results in manufacturing, was competent evidence to prove that the statement in the letter was made upon reasonable grounds for believing it to be true. See Southern Development Co. v. Silva, 125 U. S. 247, 8 S. Ct. 881, 31 L. Ed. 678.

[8] The other errors assigned relate to the comments of counsel for the plaintiff in his closing argument to the jury in relation to the failure of the government to produce an audit alleged to have been made by the government in regard to the cost of the work some time after its completion. After a colloquy between the court and counsel in regard to these comments, the court instructed the jury as follows:

"Mr. Foreman and Gentlemen: In view of the continued objection made to the comment to you about the government's failure to introduce the prior audit or to produce it, Mr. Willard agrees that that part of his argument may be struck out, and that you may be instructed not to pay any attention to that part of the argument * * * and that no inference is to be drawn against the defendant because of that."

If the comments of plaintiff's counsel were improper, which we do not find it necessary to decide, we think this instruction of the court removed their consideration from the jury.

[9] It is also assigned as error that counsel for the plaintiff made a statement to the jury which was, in substance, that the defendant relied upon the hope that, by some talk about war profits and big contracts, the jury would believe "that West & Dodge got something that they were not entitled to," and that an answer to this was that no claim had been made and no action brought against plaintiff to recover back any money that it might be claimed was paid or received by it improperly.

Upon objection by counsel for the defendant, counsel retracted this statement. Although it was not warranted by the evidence, and evidently made by counsel in the heat of argument, as, however, it did not bear upon any material issues before the jury, and was promptly retracted, we think it so apparent that the defendant was not injured thereby that it cannot be regarded as sufficient ground for reversal.

The judgment of the District Court is affirmed, with costs to the defendant in error in this court.