## MUTUAL LIFE INS. CO. OF NEW YORK v. SAVAGE.

Circuit Court of Appeals, Fifth Circuit. March 5, 1929.

No. 5365.

Robert H. Thompson and J. Harvey Thompson, both of Jackson, Miss. (Frederick L. Allen, of New York City, on the brief), for appellant.

R. C. Stovall, of Okolona, Miss., for appellee.

Before WALKER and FOSTER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This was an action on two insurance policies on the life of Mabry L. Abernethy. Each of the policies was issued in May, 1926, and contained the following provision:

"Suicide. In the event of the self-destruction of the Insured, whether sane or insane, within one year after the date of issue of this Policy, the amount payable shall be limited to an amount equal to the premiums paid hereon."

The insured came to his death on January 25, 1927. There was evidence to the following effect: The deceased, a farmer, left his home about 8 o'clock in the morning. Before 9 o'clock he was found in an unconscious and dying condition, sitting at the wheel of his Ford coupé automobile, having two bullet wounds in the right side of his head an inch apart, one above and the other to the rear of his right ear, his head resting against the glass of the window to his left; all the windows of the car being closed. The car, headed east, was standing on the right-hand side of the road, the motor not running. It was in a valley between two hills, and there were no houses nearer than a mile away. A pistol was in the deceased's lap under the steering wheel, his right hand on or near it; a witness stating, "The hand just resting lightly on top of the gun as if it had been placed there." The two bullets found in deceased's head were of the caliber fitting the pistol. The pistol contained two empty cartridges, and between them a loaded cartridge which had been snapped but had not exploded. One of the bullets went directly through the head to the front of the ear on the left side. The other

bullet entered about a half inch behind the first-mentioned wound and ranged downward and backward. There were no powder burns. It had been raining and the ground was muddy. On the north side of the road there were tracks going down to the car. On the other side of the car were tracks going south, a witness stating that the tracks "did not look like somebody walking across the field, but looked like they might have been in a hurry." There was no evidence as to the ownership of the pistol, which, after being fired, required a release and a pull on the trigger to fire another shot. A physician, who qualified as an expect in surgery, testified to the effect that in his opinion a man shot through the head in the manner indicated by the course of the bullets would not be able to fire another shot. Another physician, who testified as an expert, stated that it is possible and probable that a man intent on suicide might pull the trigger of a pistol twice after the first bullet had penetrated his brain. Upon the conclusion of the evidence the court overruled a motion of the appellant that the jury be directed to find a verdict for the plaintiff for the amount of the premiums paid with interest thereon at 6 per cent. per annum from January 25, 1927, to date, and in no greater sum. That ruling and the action of the court on an objection to a question mentioned below are assigned as errors.

■ The evidence as to how the death of the insured was caused was wholly circumstantial. To say the least, all the circumstances disclosed were not inconsistent with the hypothesis that the death was caused otherwise than by the voluntary act of the insured. The evidence as to the number and character of the wounds inflicted, as to the effort required to fire or attempt to fire the pistol after the infliction of either of those wounds, as to the possibility or impossibility of the victim of the wounds inflicting both of them, as to the location of the pistol when it was found, and as to tracks leading to and from the car, and the absence of evidence that the pistol had been in possession of the insured prior to his death, were proper to be considered in determining whether the death was or was not self-caused. Where the evidence as to a fact matter is of such character that reasonable persons, in an impartial and fair exercise of their judgment, may honestly reach different conclusions, the question is for the jury. We are not of opinion that the evidence as a whole so conclusively showed that the death of the insured was caused by himself as to require the court to take from the jury the determination of the question whether it was or was not so caused.

■ After a physician who was examined as an expert in behalf of appellant had testified to the effect that it is possible and probable for a man intent on suicide to pull the trigger of a pistol twice after the first bullet had penetrated his brain, and that the stated opinion of the witness was based on numerous cases that had come under his personal observation and numerous cases mentioned in medical literature, the following questions were asked the witness on his direct examination: "Proceed and state to the jury specific instances of injuries to the brain of which you have learned through recognized medical authorities, or which have come under your personal observation in your practice of your profession, as illustrative of the character of injuries where muscular and other actions are not stopped at once by the wound?" "What are your reasons from your own observation in your practice for stating that Mr. Abernethy could have pulled the trigger of the pistol twice after the first bullet entered his head, as described by Dr. Wicks?" Appellee's objections to these questions were sustained, the court in connection with its rulings saying that the witness could state reasons for his opinion, but could not detail facts coming within his observation. The court did not commit reversible error in sustaining objections to the questions. In doing so it exercised the power of confining the evidence to matters in issue, and the discretion of limiting the extent to which expert testimony may be carried on direct examination. Davis v. United States, 165 U. S. 373, 16 S. Ct. 353, 40 L. Ed. 499; Jones' Commentaries on Evidence (2d Ed.) § 1339.

The record shows no reversible error. The judgment is affirmed.