LANE et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
August 29, 1929.

No. 8266.

Eustace C. Wheeler, of St. Louis, Mo., for plaintiffs in error.

C. J. Stattler, Asst. U. S. Atty., of St. Louis, Mo. (L. H. Breuer, U. S. Atty., of Rolla, Mo., and George C. Dyer, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before STONE, BOOTH, and GARD-NER, Circuit Judges.

GARDNER, Circuit Judge. In this case plaintiffs in error, Thomas J. Lane and Ernest L. Kime, hereinafter referred to as defendants, were indicted in an indictment containing six counts, and which charges the defendants with having devised and intending to devise a scheme for the obtaining of money and property by means of false and fraudulent pretenses, representations, and promises, and with having placed and caused to be placed in the post office of the United States at St. Louis, Mo., for mailing and delivery, the six letters set out in the indictment. The indictment generally charges that there was organized and caused to be organized, by the defendants and others, a corporation known as the International Motor Transit Company of Iowa, and that through this corporation the defendants made and caused to be made the alleged false and fraudulent pretenses, representations, and promises charged in the indictment, as an aid to them in obtaining

money and property from the public, or any one with whom they might be able to come in contact.

The alleged scheme for obtaining money and property by means of false pretenses was in substance to the following effect: That the defendants would offer for sale to the victim contracts issued in the name of the International Motor Transit Company of Iowa, whereby the defendants, under the name of International Motor Transit Company of Iowa, would agree to furnish trucks and would agree to furnish freight for hauling to the victims, and would pay to the victim certain sums stipulated and agreed to by the defendants and victim for the services rendered by; them to the defendants, the price of the truck being agreed upon and stipulated in such contract; that as a part of and in furtherance of said scheme the defendants established offices in the city of St. Louis, Mo., and that data relating to the plans and prospects of said corporation, and the defendants' operation thereof was furnished from said office in St. Louis; that said data and information was circulated by means of news items and advertisements inserted in newspapers, and by means of the United States mails, and by personal solicitation and representation through agents and representatives employed by the defendants, under the name of the International Motor Transit Company of Iowa.

It is charged that, in furtherance of this scheme to defraud, certain letters as set out in the indictment were sent out through the mails. The indictment contains no specific charge of conspiracy. In addition to these defendants here named, there were joined with them as defendants in the indictment Glenn R. Cushman, J. W. McKinley, and J. W. Lane. The case was, in effect, dismissed as to the defendants J. W. McKinley and J. W. Lane. Glenn R. Cushman failed to appear, although a party defendant, and all of the letters set out in the indictment were signed by Cushman. It will be borne in mind that only Thomas J. Lane and Ernest L. Kime were in fact tried.

The jury found the defendant Lane guilty on count 4 of the indictment, and not guilty as to all other counts, and found the defendant Kime guilty on counts 2, 3, 4, 5, and 6, and not guilty on count 1. Their motion in arrest of judgment, as well as their motion for a new trial, was overruled. Lane was sentenced to imprisonment for a term of four years, and Kime was sentenced to imprisonment for a term of four years on each count; the sentences to begin, run, and terminate

concurrently. Upon this appeal a number of specifications of errors are presented, many of which, in the view we take of the case, it will not be necessary to consider.

In the course of the trial the government produced a witness by the name of W. L. Noah, a post office inspector. He testified, among other things, to having met Glenn R. Cushman, indicted with the defendants, but not on trial, and that he had had a conversation with Cushman. No time was given when the conversation took place, and the following, relative to this conversation, appears from the record:

"Q. Tell the jury when and where, Mr. Noah. A. That was the first time, about the first time, I heard of the International Motors Transit Company of Iowa.

"Mr. Bass: I object to any conversation with Cushman. Cushman is not now on trial.

"The Court: Cushman is not here, Mr. Stattler, and not on trial.

"Mr. Stattler: These men were all working together; that has been shown, and it goes to the question of their intent.

"The Court: Here in St. Louis, were these defendants connected with them?

"Mr. Stattler: Yes; and if there was any conversation about these other operations, where these defendants were connected, I also want that statement.

"The Court: Where Cushman was connected with the defendants?

"Mr. Stattler: Only where Cushman was connected with these defendants, or either of the defendants.

"Mr. Bass: Unless these two defendants were present at such conversations as this witness is about to narrate, between himself and Cushman, I contend it is not competent; Cushman not being on trial. It does not in any wise affect any issue in this case, except as it might pertain to Cushman, and we object to it for that reason.

"The Court: I think it ought to be limited to conversations concerning the Davenport Company.

"Mr. Stattler: Very well; if that is the way the court feels about it, we will limit to that."

To which ruling the defendants duly excepted. Pursuing this line of testimony further, the following appears from the record:

"Q. You may tell the jury what it was that Cushman said to you. A. Well, he said that this scheme, of course, had been worked in a number of places, and that it was not feasible; that he had served time in jail for operations of the same kind.

Mr. Bass: I will ask that that be stricken

out, and the jury be instructed to disregard it. This certainly is incompetent, and is only offered to prejudice the minds of the jurors.

"The Court: The objection will be overruled.

"Mr. Bass: A statement made by Cushman that he served time in jail for this sort of thing is not pertinent to any issue here.

"The Court: Objection overruled. (To this ruling the defendants duly excepted.)

"The Witness (continuing): And that he was getting tired of serving time for other fellows; that he didn't get anything out of it personally, except a lot of abuse, and that the other men had gotten the money, and he was ready to tell the whole story.

"Mr. Stattler: That was in this connection? A. That was in connection with the International Motor Transit Company.

"Mr. Bass: I hate to be insisting, but I must once more move the court to strike from this record the testimony just given by Mr. Noah, relative to the statement of Cushman, that portion of it elicited by the last question put by the government's counsel, for the reason that same does not show, or tend to prove, anything affecting the scheme, if there were such a scheme as charged in this indictment; that it does not in any wise affect the two defendants, for the reason that the two defendants, nor either one of them, were present at the time of the statement.

"The Court: Motion denied. (To which ruling the defendants duly excepted.)"

The witness further testified that Cushman told him that the scheme was merely a truck-selling proposition.

The admission of this testimony seems to be violative of the most elementary rules of evidence. The testimony elicited was palpably hearsay, unless it was admissible on the theory that it constituted the declaration of a co-conspirator. It was not made in the presence of the defendants on trial; it constitutes no part of the res gestæ, and, if it be conceded that a conspiracy between Cushman and the defendants had been established, certainly there was nothing to show that these statements by Cushman were made during the existence of any such conspiracy. They apparently constituted a narrative of past events by which the declarant sought to exculpate himself and inculpate his codefendants, and they were not made in furtherance of the conspiracy or common design.

It appears from the record that the defendant Thomas J. Lane left St. Louis on the 26th day of January, 1926, after having been with the company less than two months. So far as appears from this record, this conver-

sation took place after activities of the parties to the scheme had ceased. Under repeated decisions of this court, the admission of this testimony constituted prejudicial error. Morrow et al. v. U. S., 11 F.(2d) 256, 259; Gerson v. U. S. (C. C. A.) 25 F.(2d) 49; Niederluecke v. U. S., 21 F.(2d) 511; De Mayo v. U. S. (opinion filed April 9, 1929) 32 F.(2d) 472.

In Morrow v. U. S., supra, the opinion in which was written by Judge Kenyon, it is said: "It is also true, as claimed by the government, that the act of one conspirator in the prosecution of the enterprise and the carrying out of the purposes thereof is evidence against all of the conspirators and is considered the act of all, and is admissible against the other conspirators; yet such act must be, as the Supreme Court says in Brown v. U. S., 14 S. Ct. 37, 39, 150 U. S. 93, 98 (37 L. Ed. 1010), 'done and made while the conspiracy is pending, and in furtherance of its object.' Admissions or acts of a conspirator after the conspiracy has terminated are not admissible against a former conspirator, nor are acts of a person committed prior to the formation of a conspiracy admissible against his subsequent co-conspirators. The rule as to declarations or acts of one conspirator is that they are admissible as against a co-conspirator, *if occurring during the pendency of the conspiracy and in furtherance of its object.*"

■ In support of the government's case there was offered and received in evidence a document purporting to be a financial statement, identified as Exhibit M-2. This document was identified by Miss Lida M. Christen, who had acted as stenographer for the International Motor Transit Company of Iowa. In referring to it, she testified that it was prepared by Mr. Thomas J. Lane in his hand-writing. She was then interrogated:

"Q. Prepared in your presence? A. I think—yes, I saw him working on it. I know these pencil figures here in this column are mine, but the rest in ink are his."

The exhibit purports to be a financial statement, addressed to the Merchants' Trust Company of St. Louis, reciting that it was made for the purpose of procuring credit from time to time from the above trust company. There is no evidence that the statement was ever delivered to the trust company, or that it in fact was ever used by the defendants, or that it constituted any part of the representations made by them.

When this instrument was offered in evidence, it was objected to on the ground that it had not been identified as having been used

by any one; that it had only been identified as having been written and signed by one of the defendants, but never put out into use for any purpose. Counsel for the government then contended that the witness Christen had testified that the exhibit was prepared by the defendant Lane and presented to her; that the footings of the column on the page headed "Liabilities" in pencil were in her handwriting, and the remainder of the statement was in the handwriting of the defendant Lane; "that at Lane's direction she prepared certain typewritten copies of that statement;" and that the witness Busse said that certain typewritten statements were shown to him. This contention was refuted by counsel for defendants, who stated to the court that there was no evidence in the case connecting this exhibit with these defendants.

Apparently on the theory that the evidence of Mr. Busse showed that this exhibit had been used by the defendants, the court overruled the objection. A search of the record discloses that there is no evidence that this exhibit was ever used as a basis for any representations made by the defendants, and while counsel for the government stated to the court that Miss Christen had made typewritten copies of it, and that these typewritten copies were used, the record does not sustain this statement. It is true that the witness Busse stated that Cushman brought him a typewritten statement of the finances of the International Motor Transit Company of Iowa, but this manifestly was not Exhibit M-2. It is not contended by counsel for the government that Exhibit M-2 was ever sent through the mails, but apparently that it was used as a part of the representations made in furtherance of the alleged scheme. In fact, the government's case seems largely to have been constructed upon the falsity of the statements contained in Exhibit M-2, and the testimony went largely to proving that the statements therein contained were false. The admission of the financial statement was therefore of the utmost importance, and, if error, it was clearly prejudicial to the defendants.

The record discloses that the only financial statement used was a typewritten statement, and this was not produced by the government, and there was no proof that it was a copy of Exhibit M-2. There being no proof that this exhibit was used as a part of the representations made by the defendants, its admission in evidence was prejudicial error.

■ It is urged that counsel for the government was guilty of misconduct in the argument of this case to the jury. In the course of the argument the following occurred:

"Mr. Stattler: I would not ask the jury to do anything they should not do, even to put these two arch crooks into the penitentiary.

"Mr. Bass: I object to the statement made by counsel for the government in his opinion that these two defendants are arch crooks. That comment is unfair. It is made to impress and prejudice the minds of the jury. I ask he be reprimanded for making the statement, and that the jury be instructed to disregard it; that the court declare a mistrial, and order a new trial in this case.

"The Court: The court regards the comment as improper. The statement will be withdrawn from the consideration of the jury, and counsel will not again make such a statement.

"Mr. Bass: I move that a mistrial be declared by reason of the improper remarks, and that a new trial be directed.

"The Court: The motion is denied. (To which rulings the defendants duly excepted.)"

These remarks were made during the heat of argument, and, while the defendants did not put their characters in issue, yet there is ground for the contention that the argument was based upon the evidence and such inferences as might be reasonably drawn therefrom. The trial court held that the remarks were improper, and in effect reprimanded counsel therefor. This, we think, under the circumstances, properly guarded the rights of the defendants, and the court properly denied their motion.

In view of what has already been said, it would seem to be unnecessary to discuss the other assignments presented, as it seems unlikely that on a retrial of this case these questions will be again presented.

The judgment will be reversed, and the case remanded to the trial court, with directions to grant a new trial.