## FIDELITY & CASUALTY CO. OF NEW YORK v. NIEMANN.

### No. 8882.

Circuit Court of Appeals, Eighth Circuit.

March 11, 1931.

Wayne Ely, of St. Louis, Mo., for appellant.

James J. O'Donohoe, of St. Louis, Mo., for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This action was instituted by Ella Louise Niemann, as beneficiary under a certain policy of insurance issued by Fidelity & Casualty Company of New York, a corporation, by which, among other things, the defendant company insured Julius H. Niemann in the sum of $7,500 against bodily injury sustained through accidental means and resulting independently and exclusively of all other causes in the death of the assured.

The plaintiff below, who was the wife and now is the widow of the insured, alleges, among other things, in her petition, that on or about the 26th day of February, 1929, while said policy of insurance was in full force and effect, the insured sustained certain bodily injuries by reason of an accidental gunshot wound which resulted, directly and independently of all other causes, in the death of the insured on or about the 27th day of February, 1929. It is also alleged that if the insured caused the gunshot wound which resulted in his death, his reasoning faculties were, at the time, so far impaired by physical and mental disease that he was unable to distinguish whether his act was right or wrong, and was not mentally capable of controlling his conduct rationally, and was impelled to said act by irresistible, irrational and insane impulses. The defendant, for answer, interposed a general denial.

Upon the trial of the case it was conceded that the insured died on or about the 27th day of February, 1929, as the result of a gunshot wound inflicted by the insured on the 26th day of February, 1929; that at the time of the self-inflicted injury and the death of the insured, the policy in suit was in full force and effect; and that if the plaintiff was entitled to recover under the policy, the amount of the recovery should be $7,500 and interest. At the conclusion of the plaintiff's case, the defendant, without stating any specific grounds, demurred to the evidence. The demurrer was overruled and was renewed by the defendant in practically the same form at the conclusion of all of the evidence in the case. The demurrer was again overruled by the trial court, and the case went to the jury; the sole question submitted being whether, at the time of the self-inflicted injury, the insured was sane or insane. The trial resulted in a verdict in favor of the plaintiff, and judgment was entered accordingly for the full amount of the policy and interest. From the judgment thus entered the defendant has appealed to this court.

There is little, if any, dispute in the evidence, which discloses the following facts: Julius H. Niemann, the insured, was a traveling salesman, about 48 years of age; on or about the 10th day of January, 1929, upon removing a strip of adhesive tape from one of his toes, a slight abrasion of the skin was discovered; he immediately consulted a physician who had for some four or five years been treating him for diabetes; upon examination the physician discovered a slight infection of the toe and signs of gangrene; upon advice of his physician the insured went home, where he remained for rest and treatment; the infection progressed slowly at first, but became more active about February 1st, and after that it spread rapidly over all of his toes and the foot up to the ankle; insured suffered intense pain and was very restless and subsequent to February 1st he slept very little; his appetite was poor; he grew constantly worse; lost weight rapidly; his eyes became dull and sunken in appearance, and he looked worn and haggard; he became subject to delusions, and on various occasions accused his wife of having roasted his foot in a furnace, and of putting bugs in his drinking water, and in various other ways gave evidence of an irrational misapprehension as to existing facts; on the morning of February 26th a surgeon was called into consultation, and after an examination informed insured that it would be necessary to amputate his foot, and about noon of that day insured obtained a revolver from a dresser drawer and inflicted a gunshot wound, as a result of which he died on the following day. His physician testified that in his opinion the insured's mind was not normal for some time before his death, and that his mental condition grew worse as the disease progressed, and that during the last four days of his life he was not mentally capable of rationally controlling his actions; that he lacked mental capacity to distinguish between right and wrong in his conduct, or to understand the consequences of his acts; and that, in the

opinion of the witness, the insured was insane at the time he committed suicide.

Dr. A. H. Dieppe was called as an expert witness, and in answer to a hypothetical question testified that, in his opinion, at the time the insured inflicted the gunshot wound which resulted in his death, he was not in possession of his mental faculties; was mentally incapable of rationally controlling his acts, and was insane.

Dr. Shutt, a witness for the defendant, testified that he examined insured on the same day and shortly before he shot himself; that after the examination he informed insured that it would be necessary to amputate the infected foot, and that insured seemed to be worried and bewildered; did not show the reaction to questions that the average man would; and that he did not react in a normal way.

Dr. Wolfert, a witness called on behalf of the defendant, testified as follows:

"Q. The statement of Mr. Niemann, Doctor, to the effect that he would rather die than have his foot amputated, do you say that was a rational statement? A. No. I think any statement that a man makes where he knows his life will probably be saved by a specific operation, and then states he would rather forego the operation and lose his life, than have the operation and save his life, it does not seem to me his mind would be normal when he made the statement.

"Q. That is evidence of an abnormal mind? A. Oh, well, personally, I think that this man, with his long diabetic condition, and the absorption from his rotten, gangrenous foot, he was sick mentally, he was sick physically, he was sick in every way."

The plaintiff, after testifying to the long illness of insured, his intense suffering, loss of sleep, loss of appetite, his weak, haggard, and unkempt appearance, and his irrational conduct, stated that, in her opinion, he was insane when he shot himself.

Appellant makes several assignments of error, but has confined its argument to four points. It contends: (1) That its demurrer to the evidence should have been sustained; (2) that the court erred in permitting Dr. Dieppe to answer the hypothetical question propounded by counsel for plaintiff; (3) that its motion for an order declaring a mistrial because of improper conduct of counsel should have been granted; (4) that the court erred in overruling its motion for a new trial.

The last assignment of error cannot be considered. It has been repeatedly pointed out by this court that a motion for a new trial is addressed to the sound discretion of the trial court. It is designed to invoke the judgment of that court upon the alleged errors set out in the motion, and the ruling upon the motion cannot be assigned for error, nor reviewed by this court. Atchison, T. & S. F. R. Co. v. Howard, 49 F. 206, 4 U. S. App. 202, 1 C. C. A. 229; McClellan v. Pyeatt, 50 F. 686, 4 U. S. App. 319, 1 C. C. A. 613; Village of Alexandria v. Stabler, 50 F. 689, 4 U. S. App. 324, 1 C. C. A. 616; Little Josephine Mining Co. v. Fullerton, 58 F. 521, 19 U. S. App. 190, 7 C. C. A. 340; City of Lincoln v. Sun Vapor Street-Light Co., 59 F. 756, 19 U. S. App. 431, 8 C. C. A. 253; Yellow Cab Co. v. Earle (C. C. A.) 275 F. 928; C., M. & St. P. Ry. Co. v. Heil (C. C. A.) 154 F. 626; Southern Surety Co. v. United States (C. C. A.) 23 F. (2d) 55; C., B. & Q. R. R. Co. v. Conway (C. C. A.) 29 F. (2d) 551; Southern Railway Co. v. Walters (C. C. A.) 47 F. (2d) 3.

The second point raised by appellant involves the ruling of the trial court in permitting Dr. Dieppe, an expert witness on the part of the plaintiff, to answer a certain hypothetical question propounded to him. In seeking to present this claim of error, appellant's counsel have wholly disregarded the rules of this court as to assignment of errors and statement of the same in the brief. Rule 11 of this court, referring to assignment of errors, provides that:

"When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected."

Rule 24, which deals with the contents of the brief, provides that:

"When such error is as to the admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, giving pages in the printed record where it occurs."

As stated in Haldane v. U. S. (C. C. A.) 69 F. 819, 821:

"We have invariably held that we would not consider alleged errors in the admission and exclusion of evidence unless the testimony that is claimed to have been erroneously admitted or excluded is set out substantially in the assignment of errors and in the brief, as required by rules 11 and 24 of this court."

Manifestly, the assignment of errors and statement in the brief are wholly insufficient

in this regard, and the question which appellant seeks to present will not be considered.

During the trial, Dr. Shutt and Dr. Wolfert, two medical witnesses, and Johanna Weisert, a sister of insured, were called as witnesses on behalf of the defendant. The direct examination of each of these witnesses was limited to certain conversations between the insured and the witness. Upon cross-examination, counsel for plaintiff propounded a hypothetical question to Dr. Wolfert, calling for his opinion as to the sanity of insured at the time he shot himself. Counsel also asked the witness Johanna Weisert whether or not, in her opinion, the insured was rational at the time. The court very properly sustained the objection to each of these questions. In his closing argument to the jury, counsel for plaintiff made the following statement:

"Mr. O'Donohue: Mr. Ely speaks about Mrs. Weisert, who was a sister of Mr. Niemann; he speaks about the testimony of Dr. Shutt and Dr. Wolfert. How did he escape the full force of the testimony of Mrs. Weisert and Dr. Wolfert and Dr. Shutt? This is the way he did it. He put them on the stand and asked them just what he wanted—"

At this point the argument was interrupted by counsel for defendant, and the following occurred:

"Mr. Ely: I will object to that argument, and move a mistrial in this case. (The last statement of counsel for plaintiff was read to the Court.)

"Mr. Ely: He says we escaped the full force of their testimony by putting them on the stand and asking them what questions we wanted, indicating that they would have testified otherwise under other circumstances

"The Court: Yes, that is improper argument. The Court felt that under the rules prevalent here (by which this Court is bound), you were not entitled to ask them certain questions, and counsel for the defendant was entirely within his rights in relying upon the rules and practice in this Court. This Court is not responsible because lawyers come here who are ignorant of the rules of practice. It is the duty of the Court to enforce those rules, and one of those rules is, that a witness, whether in a civil or in a criminal case; whether a defendant, or anybody else, can not be asked any question outside of the fair range of his examination in chief. The objection will be sustained. Proceed in order.

"Mr. O'Donohue: Exception.

"Mr. Ely: My motion was for a mistrial; I moved for a mistrial.

"The Court: I do not think you are entitled to that.

"Mr. Ely: Exception; but the objection to the argument will be sustained?

"The Court: The objection to the argument will be sustained and counsel will be told to proceed in order. I do not think the transgression was sufficiently evil, in view of the Court's statement, to call for such radical action as you are asking for; so, that will be denied."

It is contended that counsel for appellee was guilty of misconduct in making this statement in his argument to the jury; that the language was improper and prejudicial, and appellant's motion for an order declaring a mistrial should have been granted.

Gratuitous statements of counsel, not warranted by the evidence, are universally frowned upon and regarded as improper by the courts for the obvious reason that the statements themselves, or the inferences which naturally flow from them, might, and quite frequently do, tend to distort the facts, mislead or improperly influence the jury, and interfere with the impartial and orderly function of the court, and in cases where such misconduct on the part of counsel has had that result, the courts have uniformly held it sufficient grounds for a reversal of the judgment. It does not follow, however, that because a remark of counsel, made in the presence and hearing of the jury, is unwarranted and improper, that it should necessarily be regarded as sufficient ground for reversal. In passing upon this question in the case of Simpson v. Stein, 52 App. D. C. 137, 284 F. 731, 733, the Court of Appeals of the District of Columbia, announced the rule as follows:

"In order to reverse the case on the third assignment of error, we must be satisfied from the record: First, that the plaintiff's attorney, in his argument to the jury, was guilty of misconduct which was likely to mislead, improperly influence, or prejudice the jury against the defendant; second, that, after objection, the court, by failing to apply appropriate disciplinary measures or to give suitable instructions, left the jurors with wrong or erroneous impressions, which were likely to mislead, improperly influence, or prejudice them to the disadvantage of the defendant."

The questions for consideration, therefore, are: (1) Did the remarks of plaintiff's attorney, constituting the alleged misconduct,

tend to mislead, improperly influence, or prejudice the jury against the defendant? If so, (2) were these erroneous impressions and feelings of bias or prejudice of such a fixed character that they were not corrected or removed by the disciplinary action of the court? The argument complained of was, undoubtedly, improper; but there was nothing in it of an inflammatory character, neither are we persuaded that the language used tended to mislead the jury or resulted in material prejudice to the defendant. Construing the remarks in the light most favorable to appellant's contention, the most that they could have conveyed was that the witnesses named, if permitted to do so, would each have testified, as a matter of personal opinion, that insured was insane when he inflicted the gunshot wound which resulted in his death. The record discloses that each of these three witnesses, upon cross-examination, had testified, without objection, to facts which, if believed by the jury, would warrant a conclusion that insured's mental condition was by no means rational or normal. Johanna Weisert testified that she saw insured a few hours prior to the shooting; that he did not greet her as usual; did not say anything outside of his foot had to be amputated; his hair was dishevelled, and he was in his underwear with his bath robe over; she had never seen him that way; he was always very particular, very neat, about himself; this morning he was not; he was not shaved; he looked like a wild man to her and she left immediately; she did not want to be with him; she saw something was wrong; his face was pale; his eyes were staring and glassy; very unusual and very nervous he was. Dr. Shutt testified that he examined the insured shortly before he shot himself; that he did not show the reaction to questions that an average man would; that he seemed to be worried or bewildered; that he did not react mentally; that he did not react in a normal way. Dr. Wolfert testified: "Oh, well, personally I think this man, with his long diabetic condition and the absorption from his rotten, gangrenous foot, he was sick mentally, he was sick physically, he was sick every way." It also appears that practically all of the other testimony in the case tends strongly to show the insanity of the insured. This evidence is undisputed and there is no substantial evidence of his sanity at the time of the shooting. At the outset of the trial, to be sure, there was a legal presumption of the sanity of the insured; but a legal presumption is not evidence, neither can it stand nor be weighed against evidence. Wigmore on Evidence, § 2491; U. S. v. Ross, 92

U. S. 281, 23 L. Ed. 707; N. Y. Life Ins. Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457; Leahy v. U. S. (C. C. A.) 15 F.(2d) 949. The argument of counsel complained of is not to be commended, but in view of the record we find nothing to indicate that it misled or improperly influenced the jury to the prejudice of the defendant. Because of our views in this regard, further discussion is, perhaps, unnecessary. We might add in passing, however, that even if the remarks of counsel did constitute prejudicial misconduct, the prompt action of the trial court in sustaining defendant's objection, and the remarks of the court incident to the matter, were such as to correct or remove any erroneous impression which might have lingered in the minds of the jury. Gulf, C. & S. F. Ry. Co. v. Curb et al. (C. C. A.) 66 F. 519; St. Louis Smelting & Refining Co. v. Henke (C. C. A.) 277 F. 665; Bethlehem Shipbuilding Corp. v. West & Dodge Co. (C. C. A.) 10 F.(2d) 289; Ripy et al. v. Cloverleaf Life & Casualty Co. (C. C. A.) 9 F.(2d) 324; Lane v. U. S. (C. C. A.) 34 F.(2d) 413.

■ Matters touching the proper and orderly conduct of the trial are quite properly within the sound discretion of the trial court. The court sustained the objection, declared the argument improper, and, in effect, reprimanded counsel. The motion for an order declaring a mistrial was denied for the reason as stated by the trial judge: "I do not think the transgression was sufficiently evil, in view of the Court's statement, to call for such radical action." We find nothing in the record to indicate that the sound discretion thus exercised by the trial court was abused, and abuse of discretion will never be presumed. Atchison, T. & S. F. R. Co. v. Myers (C. C. A.) 63 F. 793.

■ The first point urged by appellant is, in effect, a challenge to the sufficiency of the evidence to sustain the judgment. In the absence of exception to the court's instructions, the legal test of insanity as announced therein becomes the law of the case. The precise question, therefore, raised by this assignment of error, is whether or not, tested by the definition of insanity embodied in the instructions of the court, there is substantial evidence in the record which tends to prove that the insured, at the time he inflicted the gunshot wound which resulted in his death, was insane. In support of its position upon this question counsel for appellant have devoted considerable space in the brief in pointing out apparently contradictory and inconsistent statements in the testimony of appellee and

other witnesses testifying in her behalf, which, it is contended, discredit their testimony and render it unworthy of belief. This argument is one which might very properly have been addressed to the jury, but it has no place here. It is not the province of this court to pass upon the credibility of witnesses or the weight which should be given to their evidence. The record discloses an abundance of evidence which, if believed by the jury, sustains the verdict. There was, therefore, no error in overruling defendant's demurrers to the evidence. Mutual Life Ins. Co. v. Terry, 82 U. S. (15 Wall.) 583, 21 L. Ed. 236; Charter Oak L. Ins. Co. v. Rodel, 95 U. S. 232, 24 L. Ed. 433; Rodgers v. Travelers' Ins. Co., 311 Mo. 249, 278 S. W. 368; Mutual Life Ins. Co. of N. Y. v. Savage (C. C. A.) 31 F.(2d) 35; Travelers' Ins. Co. v. Schenkel (C. C. A.) 35 F.(2d) 611.

Finding no prejudicial error in the record, the judgment appealed from must be affirmed.